# Ross *et al. versus* Baker.

1. Land was sold by parol. The vendees took receipts from the vendor for the purchase-money, stating the amount paid to be for the "Fleming farm on French creek." *Held* to be a sufficiently certain description.

2. Canfield, by payment of purchase-money, was equitable owner of the land, and sold to Ross, taking his receipt referring to the land, for the purchase-money. A deed was made to Canfield. Afterwards judgment was entered against him, and the land sold by the sheriff as Canfield's. Announcement at the sheriff's sale of Ross's title, and other facts in the case, evidence for jury of notice to put the purchaser on inquiry.

October 22d 1872. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, J.J.

Error to the Court of Common Pleas of *Crawford county :* of October and November Term 1871, No. 117.

This was an action of ejectment, by Sobieski Ross, Arch F. Jones, David F. Glassmire, Pierre A. Stebbins, Jr., Don Carlos Larrabee and Obadiah T. Ellison, against Adam Baker, for a tract of fifty acres in Fairfield township, brought February 18th, 1869.

The cause was tried May 16th 1871, before Lowrie, P. J.

On the 14th of February 1865, James Martin conveyed to Horace R. Stout the land in controversy, the purchase was made with the money of Ira Canfield and Isaac Canfield, his son, they having thus the equitable title, by reason of the payment of the purchase-money.

On the 2d of March 1865, the Canfields sold the premises for $8000 to the plaintiffs (except Ross), in different proportions, and gave a separate receipt to each of them for his part of the purchase money; Ellison's part of the purchase-money was paid March 14th, and a receipt for it then given to him. Jones transferred to Ross, the other plaintiffs' part of his proportion.

[Ross v. Baker.]

Stout, by deed dated March 22d 1865, conveyed the land to Ira Canfield.

On the 21st of July 1865, A. P. Funk recovered a judgment for $499.62 against the Canfields.

Canfield, by deed dated September 1st 1865, conveyed the land to the plaintiffs :—this deed was recorded January 4th 1866.

Execution was issued against the Canfields on Funk's judgment, the land in question was levied on and sold to Robert Stitt for $740, and the sheriff's deed by Stitt's direction made to Baker the defendant on the 17th of August 1866. There was evidence of notice at the sheriff's sale and otherwise, that the land belonged to the plaintiffs, and that the Canfields had no interest in it.

The evidence is so fully detailed in Justice Read's opinion, that no further statement here is necessary.

The court charged :—" Whether the receipts of Canfields to plaintiffs are sufficient to pass any title as of their dates we reserve as a point of law, for future consideration, and assume, for the present, that they are.

" If you believe that the purchaser at the sheriff's sale had notice from the plaintiffs, or any one acting under them, of this earlier title, then the sheriff's vendee takes no title by his deed. Mere loose rumors in the crowd, or indefinite warning by strangers, are of no avail. Notice that the Canfields had no title told only what appeared of record, and nothing about an earlier title in the plaintiffs. Notice, to be valid, ought to have directed bidders to the unrecorded title on which the plaintiffs relied, and to accessible means of ascertaining its nature and validity. Without this it may be a mere slander of title. Without such notice, the plaintiffs cannot succeed on that title. If they gave such notice their title is good."

The verdict was for the defendant.

On the reserved point, Judge Lowrie said :—" The receipts of Canfield & Son, to the plaintiffs, dated 2d and 14th March 1865, and given in evidence, we think are not sufficient to convey to the several plaintiffs the equitable title to this land as of their dates. They describe no land by either adjoinings, township or county, and there is no evidence that the land was known as the Fleming farm, the last receipt (to Ellison) is still more indefinite, therefore, judgment for the defendant on the reserved point."

The plaintiffs removed the record to the Supreme Court and assigned for error the charge of the court and entering judgment on the reserved point.

D. C. McCoy and F. B. Guthrie, for plaintiffs in error.—If inquiry be a duty, whatever puts a party on inquiry amounts to notice : Maul v. Rider, 9 P. F. Smith 167. No particular form

of words is necessary for a contract for the sale of land: Colt *v.* Selden, 5 Watts 525; Lowry *v.* Mehaffy, 10 Id. 387; McFarson's Appeal, 1 Jones 503. A receipt showing the terms of the bargain is enough: Shofshall *v.* Adams, 2 Grant 209.

*H. L. Richmond* (with whom were *M. P. Davis* and *S. N. Pettis*), for defendant in error.—The notice must be given by a person interested in the property, and in the course of the treaty for the purchase: Sug. on Vend. 276. It must be by direct information from a person who has an interest in the estate, or who may be affected by the purchase; Churcher *v.* Guernsey, 3 Wright 84; Jaques *v.* Weeks, 7 Watts 261; Kerns v. Swope, 2 Id. 75; Wildgoose *v.* Wayland, Goldsb. 147.

The opinion of the court was delivered, January 6th 1873, by
READ, J.—On the 14th of February 1865, James Martin conveyed the land in dispute to Horace R. Stout. This purchase was made at the instance of John Shaw, who was acting as the agent of Ira Canfield and Isaac Canfield his son. The Canfields furnished the money to pay for the land, and Stout conveyed the land to Ira Canfield on the 22d of March 1865. Whilst the Canfields were the owners of the equitable title, the plaintiffs on the 2d of March 1865, with the exception of Ellison, who paid on the 14th of March, paid the Canfields for the land $8000, by which the whole equitable title became vested in the plaintiffs, Sobieski Ross having acquired an interest in the land, by an assignment from Jones of a part of his interest.

On the 1st of September 1865, Ira Canfield conveyed the land to the plaintiffs, by deed, which was recorded January 4th 1866.

There was no dispute between the Canfields and the purchasers, that the latter became the owners of the equitable title to the land in controversy, in the month of March 1865, and five receipts for the purchase-money were produced in evidence on the trial of the cause. Three of the receipts, embracing eight-sixteenths, were in the following form, varying only in the name of the purchaser, the amount of purchase-money and interest:—

"Received from D. C. Larrabee, five hundred dollars, for one-sixteenth full interest in the Fleming farm on French creek.
Titusville, March 2d 1865.          IRA CANFIELD & SON."

One receipt, was "Received, Titusville, March 2d 1865, from A. F. Jones, three thousand dollars for six-sixteenths interest in the Fleming farm of 50 acres on French creek.
(Stamp 10 cents.)          IRA CANFIELD & SON."

The fifth receipt was in these words: "Received, Titusville, March 14th 1865, of O. F. Ellison, one thousand dollars, for one-eighth in fee in fifty acres on French creek, said land deeded to Ira

[Ross *v.* Baker.]

Canfield & Son, and they hold the same in trust for the said O. F. Ellison, and are to deed the said one-eighth to him at his demand and option.

IRA CANFIELD & SON."

On the trial the learned judge said: "Whether the receipts of Canfields to plaintiffs are sufficient to pass any title as of their date, we leave as a point of law for future consideration."

The reserved point was, "Are the receipts of Canfield & Son to the plaintiffs, dated 2d and 14th of March 1865, and given in evidence (*pro ut* receipts), sufficient to convey to the several plaintiffs the equitable title to this land as of their dates." The court said, "We think not. They describe no land by either adjoinings, township or county, and there is no evidence that the land was known as the Fleming farm, the last receipt (to Ellison) is still more indefinite, therefore judgment for the defendant on the reserved point." Was the learned judge right? In Evans *v.* Prothero, 21 Law J. N. S. Chanc. 772, s. c. 13 Eng. L. & Eq. Rep. 163, where the documents had been rejected by Baron Parke on the trial of an issue from the Court of Chancery, for want of a sufficient stamp, the receipt was in these words:—

"Received, this 25th day of August 1827, of Mr. Jenkyn Richards, now and before the sum of 21*l.*, being the amount of the purchase for three tenements sold by me adjoining the river Taff. Received the contents.

Witness, JOHN SWAINE.          EVAN RICHARDS."

The jury found notwithstanding in favor of the plaintiff on both issues. A motion was then made before Knight Bruce, V. C., for a new trial of the issues, and was refused. The defendants appealed from that order and the Lord Chancellor (Lord St. Leonards) said:—

"This document, if receivable in evidence, would have proved the plaintiffs' case undoubtedly. I am strongly of opinion that this document was admissible as evidence of the agreement, for on the face of it, it has every ingredient necessary to constitute a valid agreement within the Statute of Frauds. It contains the names of the seller and buyer, a description of the property sold, and the amount of the purchase-money. If I were to direct a new trial, I should not exclude this document, holding the opinion I have expressed that it is admissible as evidence of the agreement. I am perfectly satisfied that, in refusing this motion, I am not only saving the parties from ruinous litigation, but am furthering the ends of justice on the merits."

This case had been three times tried, Justice Wightman and Baron Parke rejecting the document, and Baron Platt admitting it, and it was heard by V. C. Wigram, Lord Cottenham, Knight Bruce, and finally decided by Lord St. Leonards, and is incorpo-

[Ross *v.* Baker.]

rated by him in the thirteenth edition of his learned treatise on the Law of Vendors and Purchasers, pp. 105 and 461, as settled law.

In the case before us the receipts contain the names of the seller and buyer, a description of the property, and the amount of the purchase-money and its payment. The Fleming farm is identified by Isaac Canfield, and the locality on French creek is quite as certain as adjoining the river Taff. There was, therefore, error in the decision of the court on the reserved point.

On the 31st July 1865, A. P. Funk obtained a judgment against Ira and Isaac Canfield for $499.62, on which execution was issued, the land in dispute levied on and sold by the sheriff to Robert Stitt for $740, and who made the deed to the defendant (to whom Stitt had sold his right), which was acknowledged August 17th 1866.

At the sheriff's sale Isaac Canfield, Robert Stitt and Adam Baker, the defendant, were present. Isaac Canfield testified, "I was present at the sheriff's sale, and gave notice to the sheriff in the presence of the buyers, that we did not own the land. The plaintiffs also sent notice to the defendant by Gordonier. We called out that we had no interest in the land. We stood fifteen or twenty feet from the sheriff. I forbid, as my father and I did not own the land."

James T. Morley sworn: "I was present at the sheriff's sale. Notice given by Isaac Canfield to the sheriff and the crowd that neither he nor his father had any interest in the land. There was also a written notice much the same read by the sheriff. I think *Stitt then* advised me not to bid. He thought it would end in a lawsuit."

Daniel F. Glassmire, one of the plaintiffs, sworn: "I was at the farm in the fall of 1867 or 1868. I asked Baker why he bought the farm when he knew the Canfields did not own it. He said, Finney had warranted he could hold it. I told him then, when we had bought. He said he had notice that other parties had bought. He knew of the notice at the time of the sheriff's sale that the other parties owned it, and that after Stitt's purchase he employed Finney to examine the title."

Pierce A. Stebbins, a plaintiff, sworn: "I sent notice to the sheriff of our claims by Mr. Gordonier."

Samuel M. Wills sworn: He went with Glassmere to see Baker. "Baker said he had learned there was something wrong about it, and he would not buy until he had seen Finney."

W. B. Gordonier, in his deposition, testified: "I reside in Coudersport, Potter county, Pennsylvania. In the year sixty-six and sixty-seven I was operating in the oil regions; while there, I learned that the Canfields' estate was all advertised for sale, and among others, the lot purchased by the plaintiff in this suit was

advertised. I came home to Coudersport a week before the sale was to take place, at Meadville, and told the plaintiffs, that the lot was advertised as Canfield's property. I was going to return immediately and did so. A. G. Olmstead, the plaintiff's attorney, drew up a written notice of their title to the fifty acres in controversy, and sent it by me to be handed the sheriff of Crawford county, to be read at the sale. I got to Meadville and gave the sheriff the notice while the sale was pending. I knew the sheriff; his name' was Krick. Ira (Isaac) Canfield and a lawyer McAlister were present at the time, and others who were strangers. The sheriff took the notice and made the remark *that notice had already been given of that title.* I heard the sheriff, Canfield and McAlister all say that notice had been given already. I then said to the sheriff, that the parties in Coudersport had requested me to hand him the notice and have it read, and he said as notice had already been given, this sale would not affect their title."

It is clear that at the time of Funk's judgment, the Canfields were not the owners of the land in dispute, but that the whole equitable title to it was in the plaintiffs. The only question therefore is, was the defendant conusant of the plaintiff's title, or had such information or notice as to put him on inquiry which would lead to a knowledge of the requisite fact by the exercise of ordinary diligence and understanding. The cases of Barnes v. McClinton, 3 Penn. Rep. 67; Hill v. Epley, 7 Casey 331, and Owens v. Myers, 8 Harris 134, fully establish this doctrine, and the vigorous language of Chief Justice Gibson in the first case is well worthy of an attentive perusal. The evidence above stated shows clearly that the Canfields publicly disclaimed all title to the land, naturally in reference to the time when the judgment was entered. Stitt the bidder put this construction upon it, for Morley says: "I think Stitt then advised me not to bid; he thought it would end in a lawsuit." The defendant said, "He had notice other parties owned it. He knew of the notice at the time of the sheriff's sale, that the other parties owned it, and that after Stitt's purchase, he employed Finney to examine the title," which Mr. Finney did, and upon the same state of facts probably was of the same opinion with the learned judge. Gordonier's evidence shows plaintiff's title was known at the sale. "The sheriff took the notice and made the remark that notice had already been given of that title," and he said "as notice had already been given this sale would not affect *their* title."

Upon such evidence, it is certain if believed, the jury might have found that the defendant had notice and full knowledge of the title of the plaintiffs.

The charge of the learned judge "That notice from the plaintiffs or any one acting under them of this earlier title, then the sheriff's vendee takes no title" was calculated to mislead the jury by con-

[Ross *v.* Baker.]

fining the notice really to the plaintiffs only and excluding all notice by the Canfields, and all actual knowledge of the plaintiffs' title by Stitt on the defendant.

The circumstances attending the sale show this to be a correct view. The plaintiffs in March 1865 paid for this land $8000 in cash. The judgment was for $449.62, and the sale in the summer of 1866 was for $740, or less than one-tenth of the price paid by the plaintiffs; pregnant proof of knowledge of the title of the plaintiffs by the bidders at the sheriff's sale.

A decision made to-day makes it necessary, the receipts should be properly stamped before they are again offered in evidence.

Judgment reversed and venire de novo awarded.