## Taggart's Appeal.

A. died seised of certain real estate, leaving a will wherein he devised to his wife such portion of his estate as she would have taken under the intestate laws, had he died intestate, and empowering his executor to sell his real estate upon the written application of his wife and either of his children, or of any two of his children, providing that the dower of his wife should remain in such real estate when sold, unless she chose to release the same, in which case the amount thereof should be paid to a trustee for her use. The widow elected to take against the will, and subsequently, on the request of two of the children, a certain part of the real estate was exposed to sale, the terms being that one-third of the purchase money was to remain charged upon the land whereof the interest was to be paid annually to the widow. The widow knew of and was present at the sale, and made no objection to the manner in which her interest was preserved. She was also present at the time of the payment of the earnest money. More than six months after the delivery of the deed to the purchaser, she presented her petition to the Orphans' Court for partition of the real estate. An inquest was awarded and a return made that it could not be divided, whereupon the purchaser at the executor's sale obtained leave to be made a party to the proceedings and filed exceptions. *Held*, that the widow was estopped from maintaining partition, and that, therefore, the proceedings instituted by her were properly set aside.

February 16th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from a decree of the Orphans' Court of *Lycoming County :* Of January Term 1882, No. 182.

This was an appeal by Rebecca Taggart, widow of James Taggart, deceased, from a decree of the said court setting aside certain proceedings instituted by said appellant for the partition of certain real estate of her said husband.

The facts of the case were as follows-: James Taggart died August 13th 1878, leaving him surviving his widow Rebecca Taggart and several children, and seised, inter alia, of certain real estate in Lycoming county. By this will he gave to his widow the same interest in his estate real and personal that she would have taken had he died intestate. He also ordered that his executor should sell at public sale the whole or any part of his real estate on the written request of his widow and one child, or on the like request of any two of his children, provided that the dower or thirds of his wife should remain in such real estate when sold, unless she chose to release the same, in which case the amount thereof should be paid by his executor to the Fidelity Insurance Company of Philadelphia, in trust for her during her lifetime. The will was admitted to probate on August 19th 1878, and on March 14th 1879, Rebecca Taggart, the widow, filed her election not to take under the will. On December 8th 1880, two of the testator's children duly requested the executor to expose to sale the real estate in Lycoming county, which was accordingly done. The sale was advertised to take place on the premises on February 6th 1880. By the terms of the sale ten per cent. of the purchase money was to be paid.down and one-third was to remain in the premises during the life of Rebecca Taggart, the interest thereon to be paid to her annually, from the first day of the following April. Mrs. Taggart knew of the sale some six or eight days before it took place, and was actually present at the time. She heard the terms of sale read and made no objection thereto. In a conversation with the executor immediately before the sale, she said : " I want to give you notice that if you sacrifice this mill as you did the timber land, I will hold you personally responsible for it."

The property was knocked down at $8,600. The hand money was paid to the executor in the widow's presence, and on April 1st the balance of the purchase money was paid—the widow's dower being secured by a condition in the deed that day delivered by the executor to Marcella Taggart, who still retains the same.

On January 17th 1881, Rebecca Taggart presented her petition to the Orphans' Court, setting forth the will of the testator, her refusal to take thereunder, and, claiming that she was entitled to one-third part hereof, prayed for a partition. Thereupon an inquest was awarded and return made that the premises could not be divided, and that the value of the said premises was $12,000.

Before the return was approved by the court, the vendee of the executor on her petition for that purpose, obtained leave of court to be made a party to the proceedings in partition, and to

object to the same. She thereupon filed sundry exceptions to the proceedings in partition, claiming that Rebecca Taggart was estopped by reason of her acquiescence in the sale to Marcella Taggart.

The court, in an opinion by CUMMIN, P. J., sustained the exceptions and set aside the proceedings in partition, whereupon Rebecca Taggart took this appeal, assigning for error the action of the court in setting aside the proceedings in partition.

*Charles Hower* (with him, *A. D. Hower*), for the appellant.

*W. H. Armstrong* and *John G. Metzger*, for the appellee.

Mr. Justice MERCUR delivered the opinion of the court, October 2d 1882.

The appellant, as widow of James Taggart, seeks to enforce partition of a portion of the real estate of which he died seised. He gave to her the same interest in his estate that she would taken had he died intestate. He further authorized his executor, on the written application of his wife and one of his children, or on the like application of two of his children, to sell at public sale, any part or all of his real estate, and to execute and deliver deeds therefor. The will proceeds : " Provided that the dower or thirds of my wife Rebecca shall remain in such real estate when sold, unless she chooses to release the same, she may at her option release her dower or thirds in any of my real estate sold, in which case the amount thereof shall be paid " over to the Fidelity Insurance Trust and Safe Deposit Company in trust to pay the interest thereon to his wife during her life, and on her death, to pay the principal to certain of his grandchildren.

The widow elected not to take under the will: yet from time to time, as the executor, in pursuance of the will, sold lands situate in Schuylkill county, two-thirds of the purchase money was paid, and one-third secured as the widow's dower.

On the written request of two children of the decedent, the executor sold at public sale and conveyed to the appellees the land of which partition is now claimed. The main question is whether the appellant is estopped from enforcing partition thereof ?

The express terms of the will gave to the appellant the right to retain her dower in the real estate, after a sale of the land, or, at her option, to release the land, and look to the proceeds of the sale. In declining to accept under the will, she still retained the right to consent to a sale of the whole title, and look to the proceeds alone, as a substitute for her dower in the land. This right was incident to her title : but being a feme sole she was

subject to the application of all the principles of equitable estoppel.

The terms of sale were distinctly stated, both in the newspapers and in the handbills. One of the conditions was, that ten per cent. of the purchase money should be paid down immediately after the property was struck off. Another condition, inter alia, was that " one-third of the purchase money is to remain in the premises during the lifetime of Rebecca Taggart, the widow of the deceased, the interest thereon to be paid to her annually, from the first day of April next; the principal, after her death, is to be paid as directed in the last will and testament of the deceased. The balance of the purchase money is to be paid to the executor in cash on the first day of April next, at which time the deed and the possession of the premises will be delivered to the purchaser." Another condition declared, if the executor " for any reason whatever " should be unable to deliver a good title to the purchaser, at the time mentioned, he should forthwith return to the purchaser the down money paid.

It cannot admit of any doubt that the intention of the executor, clearly expressed in the public notices of sale, was to sell and convey the whole title, subject only to the payment of the unpaid portion of the purchase money.

The uncontradicted evidence is, that the executor read all these conditions in the hearing of the bystanders, when he exposed the property to sale. The appellant testifies that she was present and heard them read, and that she knew of the intended sale some six or eight days before it took place; that she saw it in the newspapers. Mr. Huling, a member of the bar, testifies that he was present at the sale as her attorney; that she twice asked him to bid, but he declined so to do, by reason of her inability to pay down the ten per cent. of the purchase money. Neither he nor the executor, nor any other person, heard her express any objection to the sale, or to the terms and conditions thereof. She does not testify that she made any. Thus, with full knowledge that the whole title was being sold, and with a clear understanding that a purchaser would expect to acquire such a title, she interposed no objection, or qualification, to its terms.

Although the appellant denies having requested any person to bid for her, yet, by her expressive silence at the sale, she gave aid and encouragement to bidders, that she assented to and approved of all its terms. She, however, did not stop with this encouragement to a purchaser. She followed it further. Thus, immediately after the sale, she accompanied the executor and purchaser into the office, where the conditions of the sale were to be complied with, and was present when the down

[Finn *v.* Providence Gas and Water Co.]

payment was made. The executor testifies that she never, at any time, expressed dissatisfaction to him in regard to the sale.

On the first of April following, the appellee paid two-thirds of the purchase money, accepted a deed properly securing the interest payable to the widow, and took possession in pursuance of his purchase. The money thus paid was distributed to those entitled thereto, and the purchaser has made valuable improvements on the premises. Several months after possession thus taken, when the purchaser cannot be restored to her former condition, and after the land appears to have advanced in value, the appellant seeks to repudiate her action, to the manifest injury of the purchaser. To permit her to succeed in this would enable her to perpetrate a fraud on the purchaser.

It is claimed in her behalf that inasmuch as just before the sale, she said to the executor that if he sacrificed this property, as he had the timber land previously, she would hold him responsible, therefore it was such notice as affects the title which passed by the sale. No such effect can be given to this notice. On the contrary, it is calculated to confirm the full title sold. If she did not understand and intend that the whole title would be sold, she had no interest in the price for which it sold. If her dower was to remain undisturbed by the sale, she would not be affected by a sale of the interest of the heirs only. They asked for the sale as it was made, and she assented thereto.

Under all the facts of the case the learned judge was clearly right in holding the appellant to be estopped from maintaining partition. This conclusion is fully sustained by authority: Carr *v.* Wallace, 7 Watts 394; Simpson's Appeal, 8 Barr 199; Troxell *v.* Lehigh Crane Iron Co., 6 Wright 513; Ayres *v.* Wattson, 7 P. F. Smith 360.

> Decree affirmed, and appeal dismissed at the costs of the appellant.