# Marshal, Appellant, *v.* Foltz.

*Estoppel—Estoppel in pais—Partnership—Partnership lands.*

Where partnership funds are used in the purchase of land but the title is taken in the name of one of the two partners, and after the death of such partner, his widow sells the lands with the knowledge of. the other partner, and without objection by him, and the latter stands silent while improvements are being made upon the land by purchasers, he is estopped from objecting to the title of the purchasers.

Argued May 12, 1908. Appeal, No. 154, Jan. T., 1908, by plaintiff, from judgment of C. P. Fayette Co., March T., 1907, No. 128, for defendant on case tried by the court without a jury in suit of George C. Marshal v. David C. Foltz. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Issue to determine title to real estate in proceedings under the act of 1893.

UMBEL, J., filed the following opinion :

In 1872 Edmund C. Pechin purchased two pieces of land, known as the Bunker and Allen tracts, situate in Dunbar township, Fayette county, Pa., and for personal reasons took title in the name of Arthur W. Bliss.

Some time in the seventies, the exact date of the formation of which does not appear, a partnership was formed between Arthur W. Bliss and George C. Marshall, under the firm name of Bliss & Marshall, and, with a legal interruption or two, seems to have continued for one purpose or another until the death of Mr. Bliss in August, 1903.

In 1881 Bliss & Marshall purchased the Bunker and Allen tracts from Edmund C. Pechin, and paid for them out of the firm funds. As above noted, the title was standing in the name of Arthur W. Bliss, and at the time of the purchase by Bliss & Marshall no change was made in that regard, and it was allowed to continue so, subject to sales and conveyances made, until the death of Mr. Bliss.

Between the date of the purchase by Bliss & Marshall and the death of Mr. Bliss, a considerable portion of said land was

sold in small lots, the deed in all cases being made by Arthur W. Bliss et ux., and, it would seem, that most of the negotiations in that respect were conducted by Mr. Bliss.

The management of the said land, so far as use and rent are concerned, seems to have been participated in jointly, and it was known generally in the community as the Bliss & Marshall land.

On one part of the said land the firm of Bliss & Marshall for several years operated a fire-brick works which they sold to John Palmer, and while the deed was made by Arthur W. Bliss et ux., the mortgage for the balance of the purchase money was taken in the name of Arthur W. Bliss and George C. Marshall, mortgagees. There is little or no direct testimony on the point as to what disposition was made of the proceeds of the sales made in the lifetime of Mr. Bliss, yet we think, under the circumstances, the presumption is almost overwhelming that he shared them with his partner or accounted for them to the firm of Bliss & Marshall.

In 1892, George C. Marshall made an assignment for the benefit of his creditors to Jos. H. Kerr; in the deed of assignment he mentions and briefly describes three separate tracts of land of which he was, or claimed to be, the owner or part owner, but makes no mention whatever of the tract in question, nor of any interest therein other than what might be inferred from the general clause after the specific description in the deed, as follows, viz. : " And also the goods, chattels and effects and property of every kind, real, personal and mixed of the said George C. Marshall."

From the record of the proceedings in re, the assigned estate of George C. Marshall, at No. 2, June Term, 1892, insolvent docket, it appears that considerable time elapsed after the assignment was made before anything was done toward settling the estate by the assignee, and then he moved only after a rule had been issued and served on him and the assignor to show cause why he should not be removed and a suitable person appointed in his place.

February 3, 1896, more than four years after his appointment, the assignee filed his first and final account, showing a balance in his hands of $360.50 for distribution among creditors with claims, as proven before the auditor, amount-

ing to $31,610. Something over one-half of the said amount was reduced to judgments which were compromised and satisfied of record in January, 1900.

There never has been any reconveyance from the assignee to Mr. Marshall, and, so far as the record is concerned, his interest in the land in question stands just as it did immediately after the execution and delivery of the deed of assignment January 29, 1892, recorded in deed book 109, page 413.

The defendant offered in evidence the record of all the deeds executed by Arthur W. Bliss et ux. to the various purchasers for lots and parts of this land and sold before the death of Mr. Bliss, an examination of which discloses that between the date of the said assignment in January, 1892, and the date of the compromise and satisfaction of the said judgments in the early part of 1900 there were sold a number of these lots, and deeds executed, delivered and recorded, one-half the proceeds of which sales was doubtless distributed to, received and used by Mr. Marshall, as there is no account of it in the insolvent proceedings, even of the proceeds of sales made between the date of the assignment and the date of filing the assignee's first and final account. The insolvent's one-half above referred to as set forth in the deeds amounted to several times as much as was reported and accounted for by the assignee for distribution.

After the death of Mr. Bliss it was found that Bliss & Marshall were somewhat involved and owed considerable. Mrs. Lida Bliss, as executrix of Arthur W. Bliss, deceased, was desirous of discharging the Bliss & Marshall obligations. While she had no personal knowledge regarding the ownership of the land in question, yet after hearing Mr. Marshall's statement and claim she was willing, notwithstanding, by the record her husband appeared to be the sole owner, to recognize Mr. Marshall as half owner to the extent of allowing him to share in the proceeds, or that the proceeds realized from the sale of the said land, be applied to the payment of Bliss & Marshall debts, for which it was conceded Mr. Marshall was jointly liable with Mr. Bliss.

Mrs. Bliss as executrix aforesaid proceeded to make sale of this land for the purpose of paying debts and apply the proceeds to obligations of Bliss & Marshal. She presented her

petition to the orphans' court of Fayette county, at No. 70, September Term, 1904, setting forth, regarding this land, inter alia, as follows, viz. :—" These two tracts of land were purchased by Arthur W. Bliss and George C. Marshall, formerly partners as Bliss & Marshall and for convenience the title was taken in the name of Arthur W. Bliss and had not been changed at the time of his death. They were subsequently subdivided and plotted into lots, as shown by a partial plan thereof recorded in Plan Book, Vol. 1, page 22, and various lots have from time to time been sold and the money divided between said partners as will appear by sundry conveyances of record in the office of the Recorder of Deeds. Subject to the payments of the debts of said partnership and the adjustment of the equities between said partners, the said George C. Marshall is, therefore, entitled to the one-half of the proceeds arising from the sale of the remainder of said tracts. "

Under which proceedings several parts were sold, deeds made and recorded, the purchasers taking possession and making improvements. Disposing of the property in this way was attended with more or less trouble, to avoid as much as possible of which, Mrs. Bliss at No. 78, March Term, 1906 and by deed dated March 27, 1906, and recorded March 28, 1906, in deed book 255, page 445, secured title in her own name to the whole balance and thereafter made sales and deeds direct, accounting, however, for the proceeds to the credit of Bliss & Marshall.

After the death of Mr. Bliss, Mrs. Bliss either as executrix or in her own individual capacity, after securing title in her own name, made certain sales.

David C. Foltz—the defendant herein—subsequently became the sole owner and in October, 1906, began the erection of a brick works thereon and expended a considerable sum of money in that connection.

Further, soon after the sale to Foltz & McFarland in May 1906, Mrs. Bliss had prepared and sent to Mr. Marshall a statement 'of receipts and expenditures in connection with these various sales, offering that he share in the proceeds and showing the balance due him. He does not appear to have made any objection to any of the sales nor to anything else that was done, nor to have taken any account of the said no-

tice and statement, but maintained, so far as these matters are concerned, absolute silence and did not move in any particular until ruled in the early part of 1907, to do so under the act of 1893. All this, too, notwithstanding discussion regarding Mr. Marshall's claim to part of the title to this land was started between representatives of the Bliss estate and Mr. Marshall soon after the death of Mr. Bliss.

In the face of which we think it would be idle to argue that Mr. Marshall did not have knowledge of what was being done. He is certainly competent to testify regarding matters that have occurred since the death of Mr. Bliss and he does not say but that he was fully advised and apprised, and as a matter of fact we find and conclude that the manner of handling this land was with Mr. Marshall's knowledge and consent (implied if not expressed).

In their discussions and efforts to adjust their respective claims regarding this land, it seems to have been conceded that from the date of the purchase from Pechin, they, Bliss & Marshall, had been joint owners and each entitled to one-half the proceeds from sales made. Mrs. Bliss insisting, however, that in consequence of title standing in Mr. Bliss' name and he always having made the sales or conveyances that the same practice should continue and especially so in view of what she considered Mr. Marshall's extravagant ideas as to the value of the said land, fearing that if he had to be consulted no sales could be made. The Bliss estate offered to sell its interest to Mr. Marshall for about one-third of what he indicated as his opinion of its value. The testimony shows clearly that he was fully advised in this regard and, as expressed by his counsel, "it was the rock on which they split," in their efforts to compromise.

Mrs. Bliss disposed of this and in several separate parts as above set forth, for the total sum of $10,188.75, which no one now seems to question as not having been considered at that time a good, just, fair and ample price for it and we find as a fact that it was a good and sufficient price.

### CONCLUSIONS OF LAW.

While a number of interesting and important legal questions were suggested and discussed on the argument of this case, no

specific requests were submitted and filed, and we are of opinion that the controlling question is the following, viz.:

Has Mr. Marshall's silence and conduct in this matter been of such character as to estop him and prevent judgment in his favor in this action?

In Logan v. Gardner, 136 Pa. 588, our present Chief Justice says, " The doctrine of estoppel in pais has been very much extended in modern times, particularly in Pennsylvania, where equitable principles are applied in actions at law. The cases are very numerous, but it is not necessary to refer to more than a few of them. In Woods v. Wilson, 37 Pa. 379, the subject was discussed by Chief Justice THOMPSON, and it was held that silence, in ignorance of one's own right or of another's expenditures will not estop, but that where silence, with knowledge, is evidence from which a jury may find an estoppel. See also Hill v. Epley, 31 Pa. 331; and Miranville v. Silverthorn, 48 Pa. 147. These decisions rest on the ground that the circumstances were such as to raise a duty to speak, and that failure to do so is either a fraud or would work such an injury as would be equivalent to a fraud, if the party should not be estopped. On the other hand, it was held as early as Buchanan v. Moore, 13 S. & R. 304, and Robinson v. Justice, 2 P. & W. 19, that positive acts of encouragement or which help to mislead, will raise an estoppel, without any fraud and irrespective of the party's knowledge of his own rights, and, as was pointed out by Chief Justice GIBSON, this result rests on a different principle; that of two innocent parties, the one who occasioned the loss must bear it. See also Chapman v. Chapman, 59 Pa. 214; Miller's Appeal, 84 Pa. 391; and Putnam v. Tyler, 117 Pa. 570. The distinction, therefore, between the cases where acts or declarations of encouragement are necessary to create an estoppel and those where mere silence or acquiscence will be sufficient, is one of principle, and each case as it arises must be assigned to one or the other class, according to its circumstances, the chief of which is knowledge or ignorance of the party's own rights and the other's actions. Encouragement is necessary where the party is ignorant; but knowledge creates the duty to speak, and, where that exists, silence is enough to estop."

A party who stands by and sees a bona fide purchaser making a valuable improvement upon the land in the neighborhood of which the former has resided for nearly twenty years, without giving notice of an equitable title in himself, will be estopped from subsequently asserting the same.

Silence will postpone a title when one knowing his own right should speak out. One led by such title ignorantly and innocently to rest on his title, believing it secure, and to expend money and make improvements without timely warning, will be protected by estoppel: Redmond v. Saving Fund & Loan Assn., 194 Pa. 643.

Silence works estoppel when it has misled another to his injury: R. R. Co. v. Dubois, 79 U. S. 47; Hill v. Epley, 31 Pa. 331; Beaupland v. McKeen, 28 Pa. 124.

The acts of a party done in ignorance of his rights will operate as an estoppel when others have acquired rights on the faith of them : Newman v. Edwards, 34 Pa. 32; Duncan's Appeal, 43 Pa. 67; Miller's Appeal, 84 Pa. 391; Wooward v. Tudor, 81* Pa. 382; Putnam v. Tyler, 117 Pa. 570.

When the acts relied on are positive in their character or the silence so suggestive in its nature that, coupled with the fact of knowledge within the mind of him who, in honesty and fair dealing, ought to speak out, it becomes a fraud on the part of him who could speak, then it is sufficient to estop such person thereafter from making claim to the subject-matter regarding which such acts were performed or the silence maintained.

An examination into the facts of the cases where estoppel has been grounded on silence will disclose, that the silence was in relation to facts the injured party must learn through and by him who held it within his breast and failed to reveal it. If both parties have equal means of ascertaining the facts, silence upon such matters and under such circumstances cannot be held to be a fraud.

In this case we are of opinion " that the circumstances were such as to raise a duty to speak." Mr. Marshall was in full possession of all the facts and knew what was going on. He possessed knowledge regarding this matter that could not be secured from any, howsoever extensive examination of the record, and after the death of Mr. Bliss there seems to have

been no other source from which such information could be secured than from him.

An examination of all the deeds from the one whereby Pechin secured title to the Foltz deed, does not reveal a word indicating that George C. Marshall had any interest whatsoever in the title to the said land; the only deed of record bearing on the question—the deed of assignment to Jos. H. Kerr in January, 1892,—would almost warrant the presumption that he did not have any interest in the title to the land in question. We are not prepared to hold that the ex parte statement in the above quotation from the petition at No. 70, March Term, 1904, under the facts in this case, is sufficient to excuse Mr. Marshall for folding his hands and sitting by in silence and permitting all to be done that was done without a word of objection or protest on his part.

We therefore conclude that, under the circumstances, it was Mr. Marshall's duty, if not satisfied with what was being done, to speak out, not only for his own rights but for the protection of innocent third persons who were purchasing lots and making improvements thereon, and who could have no other source of definite information than through him. His failure in that regard, we think, brings him within the rule as above expressed that, " when silence is so suggestive that, coupled with the fact of knowledge within the mind of him, who in honesty and fair dealing ought to speak out, it becomes a fraud on the part of him who should speak, then it is sufficient to estop."

Mr. Marshall's silence and conduct in this matter have been of such character as to estop him and prevent recovery in this action.

Now, August 1, 1907, this matter came on to be heard and was argued, and now August 21, 1907, upon and after due consideration and for the reasons set forth in the foregoing opinion it is ordered and directed that judgment be entered in favor of the defendant with costs of suit.

*Error assigned* was the judgment of the court.

*H. L. Robinson.* of *Robinson, McKean & Martin,* for appellant.

*D. M. Hertzog,* with him *R. M. Carroll,* for appellee.

PER CURIAM, May 25, 1908 :

The judgment is affirmed on the findings by the learned judge of the common pleas.