Suchan et ux. *v.* Swope et al., Appellants.

Argued April 14, 1947.  Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Jones, JJ.

*Charles E. Hower,* with him *Swirles L. Himes,* for appellants.

*A. Lynn Corcelius,* with him *C. Jewett Henry,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, May 26, 1947:

These are proceedings in equity to obtain the specific performance of a contract for the sale of a farm in Huntingdon County.

The farm is owned by defendant Millard Ray Swope, better known as Ray Swope and hereinafter referred to as Ray. He acquired it by deed dated April 1, 1936, from Swirles L. Himes, administrator d. b. n. c. t. a. of the estate of Millard F. Swope. It contained 150 acres more or less, and on it were erected a frame house, a barn and outbuildings.

Plaintiffs, John F. Suchan and Anna P., his wife, have for many years been living on an adjoining farm and for the past five years were in negotiation with Ray for the purchase of his farm. On the night of March 30, 1945, he finally agreed to sell it to them. He conducted the transaction with one Joseph Danish who acted as agent for plaintiffs and to whom he gave a writing signed by him, as follows:

"March 30, 1945

Received of Anna Suchan Fifty ($50.00) dollars first payment on my farm the balance thirty nine fifty 3950.

Ray Swope."

At the time of the execution of this receipt Danish paid Ray the $50. in cash. The next morning Ray repented of his bargain and tried to induce plaintiffs to relinquish it but they refused to do so. On April 5 they demanded of him a deed, but then, for the first time, he told them that on December 1, 1944, he had sold part of the farm for $200 to his brother Albert Swope (later joined as a defendant in this action and hereinafter referred to as Albert) consisting of a tract of some 7 or 8 acres fronting on the State highway, and he notified them that he would not give them a deed of the farm unless this portion was excepted. The following day, April 6, he executed and delivered to Albert a deed cov-

ering this tract as well as a plot of approximately 2 or 3 acres known as the "school house lot" which he had allegedly agreed to sell to Albert for $200 some eight years before. On that same day, April 6, plaintiffs filed the present bill in equity. On April 10 Ray tendered them a deed of the farm which excepted the two portions conveyed to Albert, but plaintiffs refused to accept it. A hearing was had in the equity proceedings and the court entered a decree ordering Ray to execute and deliver to plaintiffs, upon payment of the balance of the purchase money, a deed for the farm as described in the bill (which copied the deed under which Ray had acquired it), but excepting thereout a small plot which had been conveyed by him some years before to the Sinclair Refining Company together with two rights of way for the company's pipe lines, and also excepting the school house lot sold to Albert. The decree further provided that Albert should execute and deliver to plaintiffs a quit-claim deed for the land conveyed to him on April 6 other than the school house lot. Defendants appeal.

Plaintiffs are entirely willing to accept a deed which excepts from the grant the plot and the rights of way given to the Sinclair Refining Company and also the school house lot, for they admit that they knew of these prior transactions and that they were genuine. The real controversy is in regard to the portion of the farm fronting on the State highway which Ray claims he sold to Albert on December 1, 1944.

In his attempt to defeat the present action Ray seeks recourse to the statute of frauds, claiming that the receipt of March 30, 1945, which referred to the property being sold as "my farm", did not sufficiently describe it to permit of a decree of specific performance. This contention cannot be sustained. It is true, of course, that a contract for the sale of land is unenforceable if the property is not designated with sufficient definiteness to determine what is intended to be conveyed, nor can

parol evidence be accepted to overcome the failure of the writing to locate the subject of the sale. But the ancient maxim still prevails: Certum est quod certum reddi potest, and, as was said in *Peart v. Brice*, 152 Pa. 277, 279, 25 A. 537, "parol evidence to describe the land intended to be sold is one thing, and parol evidence to apply a written description to land is another and very different thing, and for that purpose is admissible." The designation "my farm", under the circumstances of the present case, is clearly sufficient to satisfy the statute. Ray owned only one farm and the parties well knew that what was intended by "my farm" was the farm next to which plaintiffs had lived for many years and for the purchase of which they had long been in negotiation with him; if there was anything to be excepted out of it and if Ray wished to limit the generality or the term he employed it was incumbent upon him to do so expressly and not to rely upon any secret design or intention of his own. The identity of the property is certain and all that is necessary is to refer to the deed by which Ray acquired title in order, purely for conveyancing purposes, to ascertain the metes and bounds.

Our reports are replete with cases in which specific performance was granted, declarations of trust held valid, or other relief granted, where the description of the property involved was not more definite or detailed than that in the present instance; for example: "all that piece bought of Rose by Thomas Smith and Porter Fleek" (*Smith & Fleek's Appeal*, 69 Pa. 474); "Fleming farm on French creek" (*Ross v. Baker*, 72 Pa. 186); "Premises 268 and 270 So. 2d St." (*Fitzpatrick v. Engard*, 175 Pa. 393, 34 A. 803); "Hotel Duquesne property" (*Henry v. Black*, 210 Pa. 245, 59 A. 1070); "the Byers Place" (*Ranney v. Byers*, 219 Pa. 332, 68 A. 971); "All of the properties of E. J. Unger, deceased, in Croyle Township, together with the Heise and Bertenet additions" (*Haupt v. Unger*, 222 Pa. 439, 71 A. 843); "the place you now occupy . . . Number 1130 Fourteenth

Avenue, Altoona, Pa." (*Shaw v. Cornman*, 271 Pa. 260, 114 A. 632) ; "a certain lot of land owned by the female signer hereof, situate on East Avenue, Worden Place, Harvey's Lake, Lake Township, Luzerne County, Pennsylvania" (*Cohen v. Jones*, 274 Pa. 417, 118 A. 362) ; "house and garage known and situate at No. 1903 Wynnewood Road in the 34th Ward of the City of Philadelphia" (*McDermott v. Reiter*, 279 Pa. 545, 124 A. 187) ; "Dwelling house . . . with the lot . . . situate at No. 300 South 8th Street, in the City of Reading" (*Persky v. Wolicki*, 288 Pa. 98, 135 A. 609) ; "property located at 221 Fifth St." (*Andre v. Andre*, 123 Pa. Superior Ct. 597, 187 A. 321).

It might be added that the statute of frauds was not invoked as a defense in the answer filed to the bill in equity, nor was any objection made at the hearing to the admission of evidence in support of the agreement of sale; this in itself is fatal to Ray's present position: *Sferra v. Urling*, 328 Pa. 161, 195 A. 422. Moreover, Ray, being asked to what farm the words "my farm" referred, himself identified the property by answering: "The Harencane farm." "Q. That is the farm you live on? A. Yes, sir. Q. And is the one you purchased in 1936, April 1? A. Yes. I bought it. It was called the Harencane farm. I bought it at the estate sale. Q. That is the farm you purchased from Swirles L. Himes, administrator d. b. n. c. t. a.? A. Yes." Where the titleholder admits the contract as claimed by the purchaser the protective purpose of the statute is served and the agreement will be enforced by the court: *Zlotziver v. Zlotziver*, 355 Pa. 299, 49 A. 2d 779. As to Ray's receipt not fixing any time for settlement, this is of no importance in view of the fact that where, in a contract for the sale of real estate, no time is fixed for the delivery of the deed, it is presumed that the parties intended a reasonable time for that purpose: *Kearney v. Hogan*, 154 Pa. 112, 25 A. 1076; *Andre v. Andre*, 123 Pa. Superior Ct. 597, 603, 187 A. 321, 323.

It is urged by Albert that since his brother agreed to sell him the front acreage of the farm on December 1, 1944, and subsequently executed a deed to him in pursuance of that agreement, his rights therein are paramount to those of plaintiffs on the principle that, where there are outstanding two executory contracts for the sale of land, the first in time is first in right, and a court of equity will not lend its aid to violate the superior right of the first purchaser by decreeing specific performance to the later one: *Maguire v. Heraty*, 163 Pa. 381, 30 A. 151; *Kiley v. Baker*, 150 Pa. Superior Ct. 248, 27 A. 2d 478. But in the present instance this principle gives way to an overriding one which becomes applicable by reason of the fact, as the learned chancellor found, that at the time when the receipt was executed by Ray and the $50 paid to him on account Albert was present, saw and understood exactly what was being done, and said not a word about his having purchased the portion of the farm along the State highway. Although he knew of plaintiffs' negotiations for the purchase, and although he told them of his rights in regard to the school house lot, he never said anything to them concerning his alleged purchase of the other part of the farm; his first disclosure in that regard was on April 5 when plaintiffs demanded a deed from Ray. Where the circumstances are such as to raise a duty to speak, the failure to do so may well amount to fraud. "There is no principle better settled, nor one founded on more solid considerations of equity and public utility, than that which declares that if one knowingly, though he does it passively by looking on, suffers another to purchase and spend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person": *Carr v. Wallace*, 7 Watts 394, 400. This doctrine of equitable estoppel rests upon two classical legal maxims: "Qui tacet consentire videtur"; "Qui potest et debet vetare, jubet". It is a principle which has been enun-

ciated and applied by this court under many varieties of circumstances, as, for example, in *Woods v. Wilson,* 37 Pa. 379; *Chapman v. Chapman,* 59 Pa. 214; *Taggart's Appeal,* 99 Pa. 627; *Logan v. Gardner,* 136 Pa. 588, 20 A. 625; *Wahl v. Pittsburgh & Western Rwy.,* 158 Pa. 257, 27 A. 965; *Marshal v. Foltz,* 221 Pa. 570, 70 A. 857. (See the elaborate annotation on "Estoppel of one not a party to a transaction involving real property by failure to disclose his interest in the property" in 50 A. L. R. 668).

Although not referred to in the answer to the bill in equity, it is now urged, as a final defense, that a tender of the balance of the purchase money was never made by plaintiffs. As Ray declared, however, that he would not give them the deed to which they were entitled, any such tender became unnecessary, because the law is too pragmatic in its philosophy to require the doing of a vain and useless act: *Schwartz v. Wesoky,* 281 Pa. 388, 126 A. 779; *Martin v. Cybulski,* 282 Pa. 297, 127 A. 778; *Driebe v. Fort Penn Realty Co.,* 331 Pa. 314, 200 A. 62; *Sidle v. Kaufman,* 345 Pa. 549, 29 A. 2d 77; *Erkess v. Eisenthal,* 354 Pa. 161, 47 A. 2d 154; *Glen Manufacturing Co. v. Glatfelter,* 88 Pa. Superior Ct. 303.

Decree affirmed; costs to be paid by defendants.