## Sumner v. Thompson et ux.

*Griffith, Kurtz* and *Watson,* for plaintiff.

*J. Paul MacElree,* for defendants.

WINDLE, P. J., November 28, 1949.—Plaintiff has instituted this bill in equity praying specific performance of a contract for the sale of certain real estate— part of defendants' farm adjoining the farm of plaintiff in Lower Oxford Township in this county—and an accounting of certain crops grown thereon. An answer was duly filed admitting the execution of the written agreement of sale pleaded but denying that the tract of land that plaintiff seeks to have conveyed under and by virtue of the terms thereof is the one therein referred to and intended to be conveyed and denying the right to any accounting of crops. Upon the issue so joined trial was had before a chancellor.

### Findings of Fact

1. For some three or four months prior to May 25, 1948, Harold R. Sumner and Norman M. Thompson had negotiated for the sale of a tract of land owned by defendants in Lower Oxford Township, Chester County, which abutted the land in that township already owned by Harold R. Sumner.

2. On one occasion, approximately 20 days prior to May 25, 1948, plaintiff and his son, Harold R. Sumner, Jr., together with defendant, Norman M. Thompson, went upon the land owned by defendants and there Norman M. Thompson pointed out a tree on the line between defendants' farm and that of Sumner and indicated that he was willing to sell all the land to the right, looking from the tree toward the post below mentioned, of a line extending from that tree to a fence post upon which a stone had been placed on the opposite

side of said tract. Thompson said that he picked that particular fence post because it was the same distance from the corner in abutting property referred to as the Gill property along that fence line as was the tree in the opposite fence line from the corner in the Gill property at the end of that line—that he had stepped off the distance between the tree and the corner on the one side of the tract under discussion and stepped off the same distance on the other side and thus arrived at the fence post marked by the stone, thus making thereof two opposite lines equal.

3. Finally, a day or two prior to May 25, 1948, Harold R. Sumner and Norman M. Thompson orally agreed that the Thompsons would sell and that Sumner would buy all the land to the right of the line connecting the tree with the fence post hereinbefore indicated for the price of $225 an acre.

4. On May 25, 1948, a written agreement for the sale of real estate was entered into between the parties hereto in the office of John I. Watson, Esquire, Oxford, under the terms of which Norman M. Thompson and Maude M. D. Thompson, his wife, agreed to sell to Harold R. Sumner, who agreed to purchase "ALL THAT CERTAIN lot or piece of land, situate in Lower Oxford Township, Chester County, Pennsylvania, being the western part of the sellers' farm, containing between thirty and thirty-five acres of land, more or less, bounded on the west by the Gill Estate, on the south by Theodore Reburn, on the east by Thompson and on the north by Sumner, description to be in accordance with survey to be made by Arthur Crowell, Registered Surveyor", at the price of $225 per acre according to the survey, five percent or $375 to be paid on the signing of the agreement, the balance in cash at the time fixed for final settlement. The agreement provided that the premises were to be conveyed free and clear of all encumbrances and easements except

those disclosed by a physical examination of the premises and the sellers gave the buyer the right to farm the premises at the signing of the agreement. It provided further that the title would be such as would be insured by any reputable title company and for the performance of the agreement on or before 30 days from the date thereof; that the cost to survey would be borne equally between the sellers and the buyer and all growing crops in the ground be included in the agreement of sale. The agreement was signed in the presence of Jennie B. Root, Mr. Watson's secretary, after it had been prepared by her.

5. The description of the real estate to be sold as contained in the agreement of sale hereinabove quoted was dictated to Miss Root by defendant, Norman M. Thompson, in the presence of his wife and plaintiff.

6. Upon the execution of the agreement, plaintiff gave defendants his check for $375, the amount of the down payment above mentioned, which they accepted.

7. On the afternoon of the same day plaintiff went upon the land of defendants that he believed was contemplated by the agreement and planted corn there.

8. On the following day, May 26, 1948, defendant, Maude M. D. Thompson, called plaintiff on the telephone and told him she was not going to sell 30 acres of ground.

9. A day or two thereafter it was agreed orally by and between the parties hereto that if the Thompsons would forego a demand they were making that plaintiff sign a note for $250 contended to be due them by reason of crops already planted in the land contemplated and intended to be conveyed, the land would be limited to 30 acres only.

10. At the time of the signing of the agreement on May 25, 1948, plaintiff, Sumner, believed that the abutting owners of the tract to be sold were himself on the one side, the Gill estate on the west side, Theodore

Reburn on the whole of the south side, the Thompsons on the east side. Plaintiff did not learn that the Gill estate owned part of the land on the south of the Thompson tract until after the complaint in this matter had been filed and served.

11. On June 1, 1948, defendant, Norman M. Thompson, appeared in the office of John I. Watson, Esq., in Oxford, and there said to Mr. Watson in the presence of his secretary, Jennie B. Root, that he had made a mistake and that he would rather fight with Sumner than with his wife's family and he handed the check given by Sumner to defendants as down money on the date of the execution of the agreement to Mr. Watson and Mr. Watson refused to accept it. At that time he wanted the agreement surrendered and wanted to call the whole thing off, and told Mr. Watson that he and Mrs. Thompson were not going to sell any part of their farm. Upon his leaving the office, the check which had been offered to Mr. Watson and which he refused to accept, was found on the secretary's desk in the outer office through which Mr. Thompson had to go upon leaving.

12. On June 3, 1948, Mr. Watson dictated a letter addressed to Mr. and Mrs. Norman M. Thompson, Oxford, R. D., Pennsylvania, informing them that Mr. Sumner intended to go through with the agreement and suggesting settlement to be held in his office in the Masonic Building on June 24, 1948, at 10 a. m. This letter was typed, signed and mailed. The check for the down money was enclosed therein.

13. On June 2, 1948, defendants notified plaintiff that they were not going to sell him any ground at all, Thompson saying that "the agreement (of sale) wasn't any good."

14. On June 2, 1948, Arthur Crowell, registered surveyor, went to the Thompson property in Lower Ox-

ford Township, and there, over objections made by Thompson, made a survey of a tract containing 30 acres according to instructions he received from plaintiff, Harold R. Sumner, to the effect that he should "survey off thirty acres and make it equal distance on both sides." In making the survey, Crowell followed the fence lines along the south tract on the side toward the road; then along the Gill tract along a broken down fence by the woods at the end of that fence, a distance of 1,215 feet and then along what is indicated in his blue print as the Reburn line, in a direction of a post upon which a stone had been placed and then along the Thompson property to the point of beginning. On the south in Thompson's line the corner point is 96 feet along the fence row short of the tree in that line hereinbefore referred to and on the opposite line is 83 feet short of the post in that line indicated by the stone placed on top of it. The Sumner-Thompson line of the tract and the line on the opposite side thereof are of equal length. The description of the tract by metes and bounds describes the west end of the Thompson farm as indicated by the fence and fence lines.

15. The property of Gill abuts the Thompson property and the part thereof here in question on the whole west (so-called) side thereof and extends 138 feet from the southwest (so-called) corner along the south (so-called) line.

16. Defendants waived the tender of the balance of the purchase money covering the acreage described in the survey made by Crowell as above and have declined to go through with the settlement for the conveyance of the acreage to plaintiff.

17. Plaintiff planted, fertilized and cultivated a crop of corn in the area indicated. On September 1, 1948, it was cut and harvested by Jack Thompson, defendants' son, the plaintiff getting none thereof.

18. On July 16, 1948, plaintiff commenced to harvest the wheat already upon the land when the agreement was executed when he was ordered to stop by Jack Thompson and defendant, Maude M. D. Thompson. Jack Thompson then gathered up the wheat already cut, whereupon plaintiff stopped harvesting the wheat on the advice of his lawyer and got no more of that crop, defendants taking it all.

### Discussion

The facts found above are either undisputed or founded on evidence deemed credible by the chancellor, who, after due consideration, has resolved any questions in that regard as indicated by certain findings. They do not however, establish plaintiff's right to the conveyance of the tract of land he desires.

The performance of the agreements for the sale of the real estate here in controversy sought by plaintiff may not be enforced. It sounds in part in oral testimony. Plaintiff contends that defendants must be compelled to convey to him the tract of 30 acres included in Crowell's survey in reliance on the written agreement of sale, an oral agreement as to the equal length of two sides of the tract entered into before the date of the written agreement and an oral agreement as to acreage entered into subsequent to that date. He must perforce do so because nowhere in the written agreement is there any provision as to the length of the sides referred to nor that the acreage should be limited to 30 acres only. Had the latter oral agreement provided for the length of the opposite sides, as admitted in the pleadings but denied in the testimony, the result would have been no different. The contract, then, which plaintiff is seeking to enforce is a parol contract for the sale of real estate (Soles v. Hickman, 20 Pa. 180) which is within the prohibition of the Statute of Frauds of March 21, 1772, 1 Sm. L. 389, 33 PS §1,—a defense which defendants

have raised by their objection to testimony offered to establish the oral agreements above referred to: Sferra v. Urling et al., 328 Pa. 161: Suchan v. Swope, 357 Pa. 16.

This is not a case where the written agreement designates the land with sufficient definiteness to determine that the tract pointed to by plaintiff is the tract intended to be conveyed. Parol testimony here is necessary for that purpose. As said in the opinion in Suchan v. Swope, supra, at page 20, quoting from the opinion in Peart v. Brice, 152 Pa. 277, 279, "parol evidence to describe the land intended to be sold is one thing, and parol evidence to apply a written description to land is another and very different thing, and for that purpose is admissible." Here the parol testimony, admitted by the chancellor over objection on behalf of defendants, is necessary to describe the land plaintiff contends was intended to be sold. Such testimony does not simply apply the written description in the agreement of sale to the land. It describes the land. In the Suchan case, supra, the written agreement described the property as "my farm" and the court held that parol testimony was admissible to identify the farm, the only one owned by defendant Swope. Here, however, the written agreement does not describe the tract to be conveyed with such definiteness that it needs only identification by oral testimony (Cohen v. Jones et ux., 274 Pa. 417, 419)—it needs to be described as well, as plaintiff recognizes and endeavors to do by offering testimony to prove the oral agreements.

Plaintiff prays an accounting of the wheat in the ground on the disputed tract on May 25, 1948, and the corn planted thereon by him on that day immediately after the execution of the written agreement. He is entitled to an accounting of the wheat but not of the corn. The wheat is expressly "included in this agreement of

sale"—the written agreement of May 25, 1948. It was all within the tract of land included in Crowell's survey, as appears from the plan admitted in evidence as plaintiff's exhibit 4. It is personalty and therefore not subject to the provisions of the statute of frauds: Backenstoss v. Stahler's Administrators, 33 Pa. 251. The land in which it was growing is a part of that identified by parol evidence as intended to be conveyed to plaintiff. It follows, then, that the agreement for the sale of the wheat, not being necessarily the subject of a written agreement and its location having been established by parol, may be enforced.

As respects the corn, the situation is different. Plaintiff on the day the written agreement was signed and following the execution thereof, started farming the tract here in dispute, as expressly provided in the agreement he might do, and planted corn within the boundaries of the tract. He cultivated it, doubtless after defendants had refused to convey to him the land in which it was planted but apparently without objection. It would appear that he should be reimbursed therefor. However it does not appear that defendants are the ones who should reimburse him. Their son, John, harvested the corn crop and, unlike the case of the wheat where one of the defendants took part in stopping plaintiff from harvesting it, alone took it from the ground. Whether he was acting in that respect in his own right or as agent for defendants does not appear in the testimony. If the former, defendants cannot be made to account to plaintiff, their son has simply taken and apparently appropriated to his own use, certain personal property of plaintiff. If the latter, they could be called upon to account to him for the value thereof in all fairness and equity. The latter however has not been proved—plaintiff has not borne his burden in that respect. Accordingly no accounting of the corn will be ordered.

As respects the check for down payment, we are constrained to believe it was received by defendants or one of them in Mr. Watson's letter of June 3, 1948, addressed to both of them. Mr. Thompson's equivocal testimony that "it may have been returned, but the last time I saw it, it was on Mr. Watson's desk", is not convincing to the contrary. Whether or not it has been cashed does not appear on the testimony. Its disposition will be postponed until a final decree is entered after the accounting of the wheat is filed.

### Conclusions of Law

1. The contract of which plaintiff seeks specific performance is subject to the provisions of section 1 of the Statute of Frauds of March 21, 1772, 1 Sm. L. 389, 33 PS §1.

2. The contract of which plaintiff seeks specific performance is parol.

3. The contract of which plaintiff seeks specific performance may not be enforced as respects the conveyance of the real estate in question.

4. Defendants may not be compelled to convey to plaintiff the tract of land described in survey made by Arthur Crowell on June 2, 1948.

5. Defendants must account to plaintiff for the wheat harvested and taken from the tract of land on or about July 16, 1948.

6. Defendants may not be required to account for the corn planted by the latter on the tract of land and harvested and taken therefrom by defendants' son on or about September 1, 1948.

No decree finally disposing of all the claims herein advanced will be entered at this time. That must await the accounting for the wheat. For that purpose jurisdiction of this bill will be retained.

The following will be entered as a final decree, as respects the accounting for the wheat only, unless ex-

ceptions thereto are filed within 10 days after notice of the entry thereof has been given by the prothonotary to counsel of record.

### Decree

And now, November 28, 1949, defendants will, within 30 days from the date hereof, file an accounting of the wheat harvested and taken from the tract of land here in dispute on or about July 16, 1948.

Jurisdiction of this bill is retained.

Costs to abide the event.