Schmidt et al. *v.* Steinacker, Appellant.

Argued March 22, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent).

*Herman Blumenthal,* for appellant.

*F. Raymond Heuges,* with him *Herman E. Wenograd,* for appellees.

OPINION BY FINE, J., July 15, 1949:

George H. Schmidt and his wife filed a bill in equity against Otto Steinacker seeking specific performance of an agreement of sale of premises at 2942 North Lawrence Street, Philadelphia. An answer together with new matter was filed to which belated replies were made by the Schmidts and by Heck & Heck, Inc.,[1] intervening plaintiff, and after hearing the chancellor entered a decree nisi granting the prayer of the bill. Appellant's exceptions were dismissed by the court en banc and a final decree entered.

On February 9, 1946, appellees entered into an agreement of sale for the above named premises with Heck & Heck, Inc., real estate brokers, duly authorized agents for Steinacker, the appellant, for the sum of $2,300.00. Down money, $250.00, was paid to the brokers at the signing of the agreement and the balance of the purchase price was to be paid at the time of settlement to be made on or before April 10, 1946. Appellees were ready, willing and able to make settlement at that time but appellant refused.

Appellant challenges the findings of the court below contending that: (1) there was no evidence to establish that the written approval of appellant was communi-

---

[1] Heck & Heck, Inc., was, by stipulation of counsel, permitted to intervene as a party plaintiff.

cated to the vendees as required by a clause in the agreement which provided: "It is understood that this sale is made subject to the written approval of the owner, which must be obtained within ten (10) days"; and (2) that the chancellor improperly eliminated from the agreement a covenant regarding repairs to be made by appellant. After a careful examination of the record, we conclude the court below did not err in granting specific performance; the decree will, therefore, be affirmed.

Ordinarily, where an agreement of sale is executed by the vendee and the agent of the owner, and provides for written approval of the owner within a specified period, such agreement is not complete until acceptance by the vendor, as provided, has been communicated to the vendee. *Groskin v. Bookmyer*, 310 Pa. 588, 592, 166 A. 233. Leona W. Heck, an officer in Heck & Heck, Inc., was asked: "By the court: Q. Did you tell the Schmidts that you had it [the approved agreement of sale]? A. I did, and they saw it." Mr. Schmidt identified the agreement of sale and testified that on one occasion he had called Heck & Heck on the telephone and was advised that the agreement had been approved by appellant. The chancellor found as a fact that "On February 15, 1946, Otto Steinacker, defendant, approved in writing the said agreement of sale," and that ". . . upon signing the approval of said agreement of sale, delivered the agreement and approval to Heck and Heck, Inc., who was acting for both plaintiffs and defendant, and said defendant intended the agreement of sale and approval to be effective as of the time of delivery." In light of this testimony, the court below did not err in concluding that the requirements of the quoted provision had been complied with. Appellees, having signed the agreement, paid a deposit and having been shown an approved agreement, properly concluded that they had entered into a

valid and binding agreement of sale of the property in question.

Steinacker complains that the court below erred, after concluding the repair clause in the agreement was ambiguous and uncertain, in directing specific performance of the modified agreement. The court's error, as we view the record, was in determining the repair clause to be uncertain. The clause in question stipulated that the following repairs were to be made by Steinacker: "A new roof 4 new sash to be placed in rear Cellar to be cemented Front of property to be painted Leak in cellar to be repaired—Said repairs to be made within 30 days from date of this Agreement." The court below found that: "The provisions in the agreement of sale providing for the making of repairs by the defendant, Otto Steinacker, although approved by him, are *too indefinite to determine what type of repairs should be made,*" and concluded that ". . . we do not believe the provisions of the agreement providing for certain repairs to be made by defendant are enforceable because of the indefiniteness and vagueness of the provisions." [2] Steinacker himself did not consider the clause indefinite. When custom, common usage, common sense and reasonable implications of fact were summoned to his aid in

---

[2] "Equity will not decree the specific performance of a contract unless its terms are clear and capable of ascertainment from the instrument itself (Hammer v. McEldowney, 46 Pa. 334; Reilly v. Gautschi, 174 Pa. 80) ; nor will it decree such performance where the agreement is so ambiguous and contradictory in its terms as to make its meaning indefinite and uncertain (Merill's App., Pa. Supreme Ct., 16 W. N. C. 346) ; . . . The essential basis of a decree for specific performance of a contract to convey real property is a definite present agreement in regard to a specific piece of land, clearly designated as present to the minds of both parties, and to be conveyed by one to the other: (citing cases). It is not the function of a court of equity to make a contract for the parties nor to supply any material stipulation thereof: Albright v. Albright, 228 Pa. 552; Zimmerman v. Rhoads, 226 Pa. 174": O'Connell v. Cease, 267 Pa. 288, 292, 293, 110 A. 266.

examination, he responded tersely and categorically that the terms were definite.[3] "Expressions that at first appear incomplete or uncertain are often readily made clear and plain by the aid of common usage and reasonable implications of fact. Apparent difficulties of enforcement due to uncertainty of expression may disappear in the light of courageous common sense": Restatement, Contracts, §370, comment c. However, as the repair clause was obviously inserted for the benefit of the appellees who do not presently complain of the chancellor's refusal to direct repairs, we pursue the matter no further. Cf. *Penna. Mining Co. v. Thomas*, 204 Pa. 325, 328, 54 A. 101.

This litigation was not precipitated by any indefiniteness of terms of the contract but is solely traceable to a dispute between the vendor and his agent, Heck & Heck, Inc., concerning the custody of the down payment and the person to make the repairs. "The Court: What is back of the case? What is it? Mr. Blumenthal [counsel for Steinacker]: Mrs. Heck has got the money. The Court: Who? Mr. Blumenthal: Mrs. Heck. She is holding the money. That is the whole thing in a nutshell. Mr. Heuges [counsel for Schmidts]: She won't disgorge it because she said she made a sale pursuant to an agreement with Mr. Steinacker and she is entitled to her commission." On cross-examination Steinacker said: ". . . The discussion was—in other words, she argued with me that she was going to make the repairs. And I said, 'I will make those repairs.' Q. That is the only dispute you had then? A. And the money, the $250. Q. Well, if she was going to make the repairs, she was going to keep the money; and if you were going to make the repairs, you wanted the money; is that right? A. That's right. Q. So then the crux of the difference be-

---

[3] Cf. *Miller v. Hayden*, 14 Lacka. Jur. 173; *Mirbach v. Flanagan*, 8 Northumb. L. J. 24.

tween you was merely who was going to get the money and make the repairs? A. That's right."

Other assignments of error raise questions which have no bearing upon the issues here presented, and are, therefore, dismissed.

Decree affirmed at appellant's costs.