Allardice *v.* McCain, Appellant.

Argued October 12, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*John B. Nicklas, Jr.,* with him *McCrady & Nicklas* and *James P. Gill,* for appellants.

*Norman R. Schade,* with him *Campbell, Houck & Thomas,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, November 24, 1953:

This is an action in equity to compel the specific performance of a written agreement to sell real estate. The defendant, Emma McCain, was the owner in fee simple of certain premises, known and numbered as 3916 Franklin Road, Pittsburgh, Pennsylvania. These premises were occupied by the plaintiffs, William Allardice and Edna Allardice, his wife, under a written lease from Emma McCain and William McCain, her husband, dated August 1, 1942. The defendants lived in adjoining property, also owned by Mrs. McCain.

The lease provided that the plaintiffs were to have possession of the leased premises for a period of nine months, commencing August 1, 1942, and that the defendants were to receive a monthly rental of $70. The lease was renewed by the parties on March 1, 1943 for a term of one year from May 1, 1943 to April 30, 1944. During the continuance of the lease the plaintiffs and defendants on December 31, 1943 entered into a contract for the sale of the leased premises.

The contract provided that the plaintiffs should pay to the defendants the sum of $500 upon the signing of the agreement, the sum of $3,925 upon the delivery of a deed on or before 30 days from the date of this agreement and the further sum of $4,500 to be secured by a purchase money mortgage. The defendants, in turn, obligated themselves to give the plaintiffs a general warranty deed. Time was not made of the essence.

Despite the fact that there had been prior discussion between the parties concerning the erection of a garage on the premises by the plaintiffs and an option to repurchase by the defendants in the event plaintiffs decided to sell, the agreement of sale was executed without the inclusion of any provision relative thereto. A short period after the execution of the agreement, Mrs. McCain requested that the agreement be modified

to provide that the deed to be delivered should include provisions concerning the garage and the option to repurchase.

Differences arose between the parties relative to these restrictive covenants which prevented the fulfillment of the obligations of the contract. The lease of March 1, 1943 was renewed in May of 1944, approximately four months after the date of the execution of the contract of sale. On August 7, 1944, defendant, Emma McCain, deposited an envelope in the mail box at the Allardice residence which contained the hand money check, dated December 31, 1943, in the amount of $500. About seven letters passed between the parties subsequent to the return of the hand money, the last of which was sometime in April of 1946, and many discussions were had between them concerning their differences but nothing resulted from these discussions. On or about November 20, 1950, approximately six years and four months after the check was returned by the defendants to the plaintiffs, the plaintiffs filed a bill in equity for specific performance of the agreement of sale.

The plaintiffs are still in possession of the property and have continuously paid rent in the amount of $70 a month. The defendants have paid all the taxes, the insurance for the premises, and, substantially, for all the repairs made to the property.

The chancellor filed findings of fact and conclusions of law and a decree nisi, to which defendants filed exceptions. A final decree was rendered by the court en banc affirming the chancellor's adjudication granting plaintiff's prayer for specific performance of the contract of sale. Defendants appeal therefrom.

The defendants contended in the court below and here likewise contend, that the relief prayed for should not be granted because the agreement of sale was re-

scinded and cancelled by mutual agreement of the parties, shown not only by an express agreement between the parties, but also by the conduct and acts of the parties. The chancellor ruled adversely to the defendants, basing her conclusion on the following findings of fact: (1) the plaintiffs never accepted the return of the hand money; (2) the plaintiffs have never agreed with either of the defendants that the agreement of sale be cancelled or rescinded.

The Restatement, Contracts, §406, Comment b, is relied upon by the defendants to fortify their position regarding cancellation and rescission. It is there stated that "The agreement to rescind need not be expressed in words. Mutual assent to abandon a contract, like mutual assent to form one, may be manifested in other ways than by words. Therefore, if either party even wrongfully expresses a wish or intention to abandon performance of the contract, and the other party fails to object, there may be sometimes circumstances justifying the inference that he assents. If so there is rescission by mutual assent; but mere failure to object to repudiation is not a manifestation of assent to a rescission. . .". We recognize this as an accurate statement of the law in this jurisdiction, for this Court so held in *Brownfield's Executors v. Brownfield,* 151 Pa. 565, 567, 25 A. 92; but that case also pointed out that to make a parol rescission effectual as against a purchaser there must be a yielding up of the possession or some other equally *unequivocal* act, citing *Lauer v. Lee,* 42 Pa. 165, 172.

In applying these principles to the facts before us we are guided by the rule that where the evidence supports the chancellor's findings of fact and they have been confirmed by the court en banc, we must accept them as we would the verdict of a jury: See *Pregrad v. Pregrad,* 367 Pa. 177, 179, 80 A. 2d 58;

*Woodbridge et ux. v. Hall et al.,* 366 Pa. 46, 48, 76 A. 2d 205; *Kaufhold v. Taylor et al., Trustee,* 360 Pa. 372, 375, 61 A. 2d 813. When the defendants deposited the check in the plaintiffs' mail box this amounted to a repudiation of the agreement of sale by them. But this ex parte repudiation did not effect a *rescission.* Plaintiffs were under no duty to return the check representing the hand money but could continue to demand a tender of the deed standing on the rights conferred on them by the agreement of sale.

The chancellor found that plaintiffs were at all times ready, willing and able to perform and made repeated requests for a deed in conformity with the original contract of sale. The defendants refused to deliver such a deed but instead insisted that restrictive covenants, not contained in the agreement, be inserted in the deed. A tender by the plaintiffs of the hand money (attempted to be returned by defendants) and the balance of the purchase price while defendants continued to insist on the restrictive covenants, would have been a useless and futile act. The vendor can not force rescission on a vendee who does not assent thereto and the mere failure to object to repudiation is not a manifestation of assent. Restatement, Contracts, §406, supra.

The defendants allege certain acts subsequent to the return of the check, such as their payment of taxes, insurance and repairs on the premises and the plaintiffs' request for a renewal of the lease which they claim justifies the inference that the plaintiffs assented to the rescission. Standing alone these acts might have been sufficient evidence of an assent to a rescission but when taken in conjunction with the series of letters that followed the attempted return of the hand money, they are too doubtful and equivocal for us to upset the chancellor's finding of no rescission. The

case of *Lauer v. Lee*, supra, held that the acts accompanying the rescission must be such as leave no doubt of the intent of the parties.

Some three months after the check was returned we find Mrs. McCain writing to Mr. Allardice requesting that he agree to a cancellation and a return of the agreement of sale. On April 16, 1946 she again writes to Mr. Allardice saying, ". . . We realize that the signed sales agreement can, as it now stands, continue indefinitely. . . .". We must conclude, as did the chancellor, after reviewing this correspondence, that her words and conduct at that time were wholly inconsistent with her present stand that the agreement was a nullity as of August 7, 1944.

The defendants raise two other points for our consideration, both of which can be disposed of on the same ground. They allege that since five years have elapsed since the execution of the agreement of sale, plaintiffs are barred by the Act of April 22, 1856, P. L. 532, §6, 12 PS §83, from maintaining their action for specific performance. They also aver that plaintiffs are barred by their laches because of their unconscionable delay of nine years, during which time the property had doubled in value.[1]

The Act of 1856, supra, provides: "No right of entry shall accrue, or action be maintained for a specific performance of any contract for the sale of any real estate, . . . but within five years after such contract was made. . ., with the right of entry; unless such contract shall give a longer time for its perform-

---

[1] Defendants seem to assume that the alleged unconscionable delay was attributable to the plaintiffs alone. Defendants need only review their own actions to realize that had they tendered a deed in accordance with the agreement of sale, at any time after its execution, they would not have been subjected to the present hardship of which they complain.

ance, or there has been, in part, a substantial performance, or such contract, . . . shall have been acknowledged by writing to subsist, by the party to be charged therewith, within the same period: . . .".

At a very early date this Court decided in *Clark v. Trindle et al.*, 52 Pa. 492, that the words "with right of entry" meant that if entry or possession were taken before or during the five year period, the statute was tolled.

In the instant case the plaintiffs were originally in possession under a lease; this type of possession was in subordination to defendants' title and an unequivocal recognition of it. However, when the agreement of sale was executed by the parties, the plaintiffs became the owners in equity and the defendants held the legal title only as security for the purchase price. From that moment on plaintiffs' possession amounted to the adverse assertion of an equitable right.

The case of *Rayman v. Morris*, 361 Pa. 583, 65 A. 2d 397, by analogy is apposite here. There the plaintiff sought to establish a resulting trust to an undivided one-half interest in realty. The plaintiff and defendant, who were engaged to be married, agreed to buy a lot and build a dwelling thereon. The purchase price was furnished by both parties but title was taken in defendant's name only. On completion of the dwelling it was rented to plaintiff's brother and father and the plaintiff resided with them. The lessees paid rent to the plaintiff who delivered it to the mortgagee's agent, who applied part of it in reduction of the mortgage and paid the balance to defendant title holder. After plaintiff's father died and his brother left the premises, plaintiff remained in possession and continued to pay rent to the defendant, who after the engagement was broken, claimed sole ownership and disclaimed a trust. The majority of

the Court held that, ". . . While plaintiff's father and brother were lessees until 1946 under the lease from defendant, the plaintiff also was in possession. His possession, the learned chancellor held, prevented the limitation prescribed by the Act from running against him as we also recently concluded in Wosche v. Kraning, 353 Pa. 481, 485 . . . There is no evidence, though the burden of proving this fact was on defendant, that plaintiff was in possession in subordination to the defendant merely because his father and brother were her lessees.".

We fail to see any real distinction between the *Rayman* case and the instant case. In that case the plaintiff was an equitable owner, since he and the defendant had jointly furnished the funds for the purchase of the property, and despite the fact that plaintiff had paid rent to the defendant, the Court found his possession came within the statute. In the present case the plaintiffs also paid rent to the defendants, but here also the plaintiffs were equitable owners once the agreement of sale became mutually binding upon both parties. This Court in *Dubin Paper Company v. Insurance Company of North America et al.*, 361 Pa. 68, 88, 63 A. 2d 85, reaffirmed the language of Justice DUNCAN in *Richter v. Selin*, 8 S. & R. 425, where it was said: " ' "When a contract is made for the sale of land, equity considers the vendee as the purchaser of the estate sold, and the purchaser as a trustee for the vendor for the purchase money. So much is the vendee considered, in contemplation of equity, as actually seized of the estate, that he must bear any loss which may happen to the estate between the agreement and the conveyance, and he will be entitled to any benefit which may accrue to it in the interval, because by the contract he is the owner of the premises to every intent and purpose in equity." ' "

The learned chancellor has found that plaintiffs were in possession not only under a lease but also under the agreement of sale which is not an inconsistent conclusion when the contract is read in its entirety, for the contract was made subject to the existing lease agreement. Such a clause protects the vendor in case settlement is delayed and the vendee continues in possession; we have found no case where it was held that this prevented equitable title from vesting in the purchaser. Since the plaintiffs were in equity the real owners of the premises and since they had been in possession prior to the agreement, they were not required to re-enter and claim possession under the agreement of sale; the law does not require one to do a vain act. The evidence which the court below believed and on which it based its finding of possession was of the character required; therefore possession tolled the bar of the statute and plaintiffs were not prevented thereby from maintaining their action.

What has heretofore been said answers also defendants' contention that plaintiffs are barred by their laches. Neither law nor equity imputes laches to one in possession under the circumstances here presented for possession is a constant assertion and continuous claim of equitable ownership. This Court reaffirmed this principle in *Uniontown Savings & Loan Company v. Alicia Land Company et al.*, 338 Pa. 227, 13 A. 2d 65, where we held " '. . . Laches will not be imputed to one in peaceable possession of land for delay in resorting to a court of equity to establish his right to the legal title. The possession is notice to all of the possessor's equitable rights, and he need only to assert them when he may find occasion to do so' :". See *Christy v. Christy*, 353 Pa. 476, 480, 46 A. 2d 169; *Fitzpatrick v. Fitzpatrick*, 346 Pa. 202, 29 A. 2d 790; *Kepler v. Kepler et al.*, 330 Pa. 441, 448, 199 A. 198.

In *Harris v. Harris,* 70 Pa. 170, 175, we stated that ". . . In the case of the sale, the purchaser is not bound to know, or even to suspect, that the seller will not comply with his contract, and that he will not be permitted to hold the land under his purchase.".

The lower court included as a reason for its decision the additional ground that defendants had acknowledged in writing the subsistence of the sale, and thus tolled the statute. The Act of 1856, supra, provides that if the contract has been acknowledged in writing to subsist by the party to be charged therewith, within the five year period, the action may be maintained. As above stated, in her letter to Mr. Allardice of April 16, 1946, Mrs. McCain stated, ". . . We realize that the signed sales agreement can, as it now stands, continue indefinitely. . .". This was less than five years from the commencement of the present action and within five years subsequent to the execution of the contract. Appellants contend that this acknowledgment should have been made by Mr. McCain as well as by the title owner of the property, Mrs. McCain, in order to effectually toll the statute. We need not pass on the merit of this contention because as heretofore indicated we are of the opinion that possession by the plaintiffs as equitable owners was sufficient in this regard.

It is our conclusion that the findings of the chancellor were supported by sufficient, competent evidence, and that the law applied justified the result reached.

The decree of the court below is affirmed and the appeal is dismissed at the cost of the appellants, any rentals paid since the final decree of the court below to be credited toward the purchase price.

Mr. Justice MUSMANNO dissents.