369 A.2d 1195

**PARTRICK & WILKINS CO., a Pennsylvania Corporation and Duby Corporation, a Pennsylvania Corporation, Appellees,**

v.

**John ADAMS and Jetti L. Adams, his wife, Appellants.**

Supreme Court of Pennsylvania.

Argued April 11, 1975.

Decided Feb. 18, 1977.

64

Spencer Ervin, Jr., Gratz, Tate, Spiegel, Ervin & Ruthrauff, Philadelphia, for appellants.

Andrew F. Mimnaugh, Philadelphia, for appellees.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION

MANDERINO, Justice.

In December of 1967, appellants John Adams and Jettie L. Adams, husband and wife, leased premises located on Lancaster Avenue in Philadelphia to appellee Partrick & Wilkins Co., for a three year period. Simultaneously, the parties entered into a sales agreement whereby appellants agreed to sell the leased premises to appellee Partrick & Wilkins Co., or its nominee. Settlement under the purchase agreement was to take place prior to the end of the leased term, which was December 13, 1970. Appellee Partrick & Wilkins Co., subsequently assigned its interest in the sales agreement to appellee Duby Corporation. Eventually the parties agreed that the settlement date for the sale of the property would be December 10, 1970. Settlement, however, did not take place because a dispute arose concerning the exact dimensions of the property to be conveyed. Appellees thereafter filed this action requesting that appellants be required to specifically perform the sales agreement. The trial court held in favor of appellees and ordered specific performance of the agreement. Appellants then appealed to this Court. We remanded the matter to the trial court for the filing of exceptions. *Partrick & Wilkins Co. v. Adams*, 456 Pa. 566, 322 A.2d 341 (1974). After the remand, exceptions were filed by the appel-

lants and were dismissed. The trial court then entered a final decree ordering appellants to specifically perform under the sales agreement. This appeal followed.

The description of the property to be sold was described in the sales agreement as follows:

"premises 5100–02–04–06 Lancaster Avenue, Philadelphia, Pennsylvania (approximately 87' 10" on Lancaster Avenue and 104' 3⅞" on 51st Street—odd lot)."

Although the agreement refers to a 104' 3⅞" length on "[North] 51st Street," the trial court, after receiving evidence concerning the intention of the parties, concluded that the parties intended that 108' was to be conveyed. This conclusion was based on the following findings of fact to which appellants filed no exceptions in the trial court and which are not challenged in this appeal.

The property involved in this dispute is a corner lot located at the corner of Lancaster Avenue and North 51st Street. This *corner lot* and an *abutting lot* on North 51st Street were both owned by a predecessor in title, who in 1967 sold both lots to the appellants at an auction sale. For purposes of the auction, the predecessor in title published a pamphlet wherein the corner lot involved in this dispute was described as having a frontage on North 51st Street of 108 feet. There also appeared in the same pamphlet a plot plan showing the dimensions of both lots. On the plot plan, the corner lot's dimension along North 51st Street was 108 feet.

Several months after the appellants purchased the two lots, the corner lot was put up for sale and shown to the appellees herein. During negotiations, appellees' agent and appellants' agent went on an inspection tour of the corner lot. During that tour appellants' agent gave to the appellees' agent the auctioneer's pamphlet, which the appellants had received when they purchased both lots. The pamphlet, as earlier mentioned, clearly indicated in words and on a plot plan that the corner lot had a dimen-

sion of 108 feet along North 51st Street. During that tour also, appellees' agent prepared his own layout plan of the corner lot as described to him by the appellants' agent. This layout plan corresponded to the plot plan in the pamphlet. Appellants' agent also pointed out to the appellees' agent the exact physical location where the corner lot and the abutting lot met along North 51st Street. The point indicated was the wall of a building located on the abutting lot. That point was consistent with a length of 108 feet along North 51st Street for the corner lot. Following this inspection tour, appellees entered into the lease agreement and the purchase agreement for the corner lot. On December 14, 1967, appellees entered into possession of the corner lot pursuant to the lease agreement. From that date on, appellees had sole possession and control of 108 feet along North 51st Street.

During the twenty-day period between the inspection tour on November 24, 1967, and the date of the signing of the purchase agreement, appellants filed an application for a zoning permit as to the abutting lot which was not being sold. To that application, appellants attached a plot plan of the abutting lot which did not include any of the 108 feet shown in the auctioneer's pamphlet and described to appellees' agent as belonging to the corner lot.

The 108 feet along North 51st Street includes a narrow strip of land which was used at one time as an alleyway or driveway servicing the abutting lot. The strip was used as access to a fire escape and to the rear portion of the abutting lot. Those uses were discontinued in 1960 by a predecessor in title who owned both lots. That predecessor in title erected a building which blocked the driveway portion of the strip so it could no longer be used for access, and removed the fire escape so that the strip no longer served as a means of exit from the fire escape to the street.

■■ In this appeal appellants first contend that the agreement of sale was unenforceable because the description contained therein was not sufficiently definite. We must reject this argument. The law is settled that an agreement for the sale of property is enforceable if there is no doubt from the language of the agreement what property is to be conveyed. The present agreement refers to property located at 5100–02–04–06 Lancaster Avenue, Philadelphia, Pennsylvania, and clearly indicates that the property is a corner lot bounded by Lancaster Avenue and North 51st Street. This sufficiently described the property to be conveyed. *Suchan v. Swope,* 357 Pa. 16, 53 A.2d 116 (1947). Indeed, the parties to this litigation have never disputed that the property which was the subject of the sales agreement was the corner lot bounded on one side by Lancaster Avenue and on the other side by North 51st Street.

■ Appellants also raise an issue concerning the parol evidence introduced by the appellee and relied on by the trial court in making its findings of fact and conclusions of law. Appellants' brief on this point is not clear. If appellants are claiming error in the admission of the parol evidence, the issue has been waived and will not be considered because appellants failed to object to the evidence at trial. *See Brunswick Corp. v. Key Enterprises, Inc.,* 431 Pa. 15, 244 A.2d 658 (1968).

■ It may be, however, that appellants are arguing that if the agreement is reformed by the parol evidence, the agreement *as reformed* cannot be specifically enforced in view of the Statute of Frauds. They rely on our opinion of *Safe Deposit & Trust Co. v. Diamond Coal & Coke Company,* 234 Pa. 100, 83 A. 54 (1912) in which we held:

"It is the doctrine of this court, declared in numerous cases, that, where a written agreement is varied by oral testimony, the whole contract in legal contempla-

tion becomes parol. If there is anything settled in our law, that principle is firmly established. When, therefore, a party to an executory agreement in writing for the sale of lands succeeds in reforming it by oral testimony, he reduces the whole agreement to a parol contract, and deprives himself of the right to have it specifically performed. He pulls down the house on his own head. When he converts the writing into an oral agreement, the statute declares it to 'be void.' He has rectified the written contract, and in its place has established an agreement which in contemplation of law is parol, and therefore, by statutory mandate, absolutely invalid and without force. The true contract, as declared by the chancellor, cannot be enforced."

Appellants' reliance on *Safe Deposit, supra,* is misplaced for two reasons. First, the trial court did not *reform* the contract in this case. The trial court specifically enforced the contract which the parties themselves had entered into. *See Suchan v. Swope, supra.* Moreover, even if there had been a reformation of the contract, the principle of *Safe Deposit, supra,* would not be applicable.

 That principle is subject to the limitation that if the party to be charged thereon *admits* the contract in his pleading, or otherwise, the mischief the statute of frauds was enacted to guard against becomes in that case nonexistent, and the courts will then give legal effect to the agreement as modified. *See Brown v. Aiken,* 329 Pa. 566, 198 A. 441, 447 n. 3, and cases cited therein. In the case at bar, since the appellants have admitted the existence of an agreement in their answer, the agreement, even if a reformed agreement, can be enforced.

 The description in the sales agreement here was obviously meant to describe the property intended to be sold but not the exact written description of that property. The evidence before the trial court left no doubt that the parties intended that the parcel conveyed would have

a frontage on North 51st Street of 108 feet. We there-
fore affirm the trial court's decree as to specific per-
formance.

Appellants have also raised issues concerning the prop-
er adjustments to be made between the parties as of the
agreed upon date of closing, December 10, 1970.

■ Appellants contend that they are entitled to in-
terest on the balance of the purchase price due, $27,000,
from December 10, 1970, since the appellees have been in
possession since that date without payment of any rent.
The trial court did not allow any interest, relying on
*Kreider v. Brubaker*, 371 Pa. 279, 89 A.2d 502 (1952).
*Kreider*, however, recognized that the general rule is that
interest does accrue, but did not allow interest because of
an exception to the general rule. The exception was
based on the fact that during the time of the delayed
closing the purchase money was not productive to the
buyer. In this case, we have no finding of fact concern-
ing that matter. The trial court, in concluding that the
sellers in this case were not entitled to interest on the
balance of the purchase price, specifically relied on three
of its findings of fact and one of its conclusions of law.
Neither these nor any other findings of fact or conclu-
sions of law speak to the question of whether the pur-
chase money was unproductive to the buyers after
December 10, 1970. We are thus unable to affirm that
portion of the trial court's decree denying interest on the
balance of the purchase price to the sellers. Neither,
however, can we reverse and award interest. The trial
court, interpreting *Kreider* as it did, made no finding of
fact concerning whether the balance of the purchase
price, $27,000, remained unproductive to the buyers.
This matter should be determined on remand.

■ Appellants have raised several other issues con-
cerning proper adjustments including (1) whether they
are entitled to interest on the real estate taxes which

they have been paying since December 10, 1970; (2) whether they are entitled to be reimbursed for insurance premiums on the property which they have paid since December 10, 1970; and (3) whether they are entitled to be paid for monies expended after December 10, 1970, for the rental of a fire alarm system. We are unable to decide these questions because the trial court did not address itself to the first two items nor are the findings of fact sufficient to decide the issues. The third item was considered by the trial court, but the item was discussed as though the appellants were requesting monies expended for the *installation* of the fire alarm system rather than for expenses incurred in the *rental* of the system. The findings of fact and conclusions of law in this regard are not adequate for a resolution of the issue by this Court. These matters will also have to be reconsidered on remand.

The decree of the trial court ordering specific performance is affirmed. The other portions of the decree are vacated and the matter is remanded for further proceedings consistent with this opinion concerning the proper adjustments to be made between the parties as of December 10, 1970. Costs to be paid by appellants.

JONES, J., did not participate in the consideration or decision of this case.

POMEROY, J., concurs in the result.