474 A.2d 624

**Robert J. RUSISKI and Margaret M. Rusiski, his wife**

v.

**Edward M. PRIBONIC and Andrea E. Pribonic, his wife, Appellants.**

Superior Court of Pennsylvania.

Argued Oct. 26, 1983.

Filed March 30, 1984.

546

548

Raymond Radakovich, Pittsburgh, for appellants.

Robert A. Seewald, Pittsburgh, for appellees.

Before CAVANAUGH, JOHNSON and MONTGOMERY, JJ.

JOHNSON, Judge:

This appeal arises from an equity action requesting specific performance of an agreement of sale for the purchase of improved real property.

Appellants Edward M. and Andrea E. Pribonic (Pribonics/appellants) are the owners of a tract of real property, an

improved portion of which they desired to sell. Appellees Robert J. and Margaret M. Rusiski (Rusiskis/appellees), plaintiffs below, entered into a sales agreement with the Pribonics on December 2, 1978 for the purchase of the improved property for the sum of $63,900.00. The Rusiskis also tendered $1,500.00 to the Pribonics in hand money at that time. Because the improved property was nearly land-locked by the remainder of the Pribonic's property, a rider was attached to the sales agreement to provide the Rusiskis with a right of way over a portion of the property retained by the Pribonics. The rider, drafted by counsel for the Pribonics, set forth:

> Sellers agree at the time of the conveyance to grant buyers a right of way which includes roughly the last sixty feet of the driveway, leading from the acreage to McKee Road. This right of way is to be granted in the deed and is to be used solely by the buyers for the purposes of ingress and egress and it is clearly under-stood that the owners may, from time to time, use this portion of the land for water lines, sewer lines, electrical lines, gas and other utility functions.

The Rusiskis' mortgage application, in the amount of $57,500.00 was approved on January 9, 1979. Closing on the sale was then scheduled for March 9, 1979. Lawyer's Title Insurance Company prepared a deed, which included a right of way provision stating:

> ALSO, together with a right in the grantees, their heirs and assigns, to use a driveway as presently located on property of grantors immediately abutting the premises herein described on the North for egress and ingress to McKee Road provided that grantors, their heirs and as-signs, hereby reserve the right to use the property over which the driveway runs for water lines, sewer lines, electrical lines, gas and other utility functions so long as said reservation does not interfere with grantees' right of ingress and egress.

At the closing [1], counsel for the Pribonics indicated to the Rusiskis that this language in the deed regarding the right of way was unsatisfactory, alleging that the right reserved for utility lines, etc. was intended to apply to the Rusiskis, not the Pribonics (grantors). Counsel for the Pribonics therefore scratched out the proviso and tendered the deed to the Rusiskis. The Rusiskis refused to accept the altered deed, but indicated they would accept any deed consistent with the terms of the agreement of sale.

A new deed was subsequently prepared by the Pribonic's counsel and a new closing date scheduled, however the Pribonics refused to sign the new deed, claiming the prior misunderstanding was a breach of the agreement. The Rusiskis were prepared to close at this second scheduled closing and willing to accept whatever language the Pribonics required in the right of way provision, but neither the Pribonics nor their counsel appeared. Three days later, the instant equity action was commenced.[2]

The chancellor found for the Rusiskis and ordered appellants to convey the property to them with a right of way provision as originally prepared in the first deed. The purchase price was set at $46,758.36. Also, appellants were to credit the hand money, plus interest, against the purchase price and appellants were barred from removing any improvements made by them. Following denial of exceptions, the instant appeal was commenced.

Appellants raise three issues on appeal: (1) whether the court erred in finding the sales contract binding, following the first aborted attempt at closing, (2) whether appellees' action was barred by the doctrine of unclean hands and (3) whether the damages awarded were improper.

1. The Pribonics did not attend the closing, but had executed the deed prior to the closing date.

2. Subsequent to institution of the action, an advertisement for sale of the entire property owned by the Pribonics appeared in the newspaper. The Rusiskis requested a preliminary injunction to prevent any sale, which was denied. However, the land was not again offered for sale.

As stated in *Sorokin v. Krasner*, 289 Pa.Super. 324, 327, 433 A.2d 88, 89–90 (1981):

> The scope of review of an appellate court in the consideration of an appeal from a final decree in an equity action is well established. A Chancellor's findings of fact, approved by the court en banc, are entitled to the weight of a jury's verdict and will not be reversed on appeal if supported by adequate evidence. The Chancellor's findings are afforded particular weight in cases in which the credibility of witnesses must be evaluated, as the Chancellor has had the opportunity to hear their actual testimony and to observe their demeanor on the witness stand. We should not reverse on appeal unless it is evident that the lower court abused its discretion, lacked evidentiary support for its findings, or was capricious in its disbelief of evidence submitted. The same principles apply when a single judge, rather than a court en banc, reviews the case. (Citations omitted)

## I.

Appellants allege, as part of the first issue, that there existed no "meeting of the minds" regarding the right of way provision and therefore, based on this material mistake, the entire instrument was void. They argue that the interpretation of the term "owners" in the provision, as set forth in the sales agreement, can only be reasonably interpreted as referring to the Rusiskis.

The chancellor, in his adjudication, found that the only reasonable interpretation was that the term "owners" was intended to refer to the Pribonics and further held that even if the opposite interpretation was made, appellants were not entitled to refuse appellees' further attempts to perfect the sale, as time was not of the essence. We agree.

It is black letter law that there must be a meeting of the minds on the essential elements of the parties' agreement for a contract to be enforceable. *Courier Times, Inc. v. United Feature Syndicate, Inc.*, 300 Pa.Super. 40, 445 A.2d 1288 (1982). Concerning the allegation of

mistake, if the mistake is not mutual, but unilateral, and not due to the fault of the party not mistaken, but to the negligence of the party acting under the mistake, no basis for relief has been afforded. *McFadden v. American Oil Co.*, 215 Pa.Super. 44, 257 A.2d 283 (1969).

In the instant case, it was appellants who had the original disputed provision prepared. Appellees based their belief, that the term "owners" referred to the Pribonics, on prior negotiations with the Pribonics where appellees expressed their concerns regarding the possible future commercial development of the property retained by the Pribonics.

 When a written contract is clear and unequivocal, its meaning must be determined by its contents alone; the language speaks for itself and cannot be given a meaning other than that expressed. *East Crossroads Center, Inc. v. Mellon-Stuart Co.*, 416 Pa. 229, 205 A.2d 865 (1965). Therefore, where the words of a written contract are clear and unambiguous, intent is to be determined solely from the express language of the agreement. *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659 (1982). Moreover, even if the language in dispute here could be considered doubtful, doubtful language in an instrument is construed most strongly against the drafter thereof, *i.e.* the Pribonics. *In re Breyer's Estate*, 475 Pa. 108, 379 A.2d 1305 (1977).

 We agree with the chancellor that the term "owners" is susceptible to only one reasonable interpretation: "owners" refers to the Pribonics, as owners of the property to be subject to the right of way. Taking the provision in its context in the deed, it is illogical to interpret "owners" as referring to the Rusiskis, as they "owned" nothing prior to the passage of title by deed.

 Appellants next allege that their modification of the original deed was proper and the transaction negated by appellees' refusal of tender. The original deed prepared complied with the sales agreement provision regarding the right of way, albeit substituting the term "grantor" for "owner". It therefore was improper for appellants to have

attempted to modify the deed. We find no impropriety by appellees in refusing to accept the deed as modified by appellants, which modification did not comport to the provisions of the sales agreement. However, we do find it improper for appellants to have thereafter refused to perform after appellees agreed to a new provision proposed by counsel for the Pribonics and requested a second closing in order to tender performance. Appellants cannot now claim that their improper modification of the original deed relieved them from all further liability to tender performance in accordance with the sales agreement.

The third allegation argued by appellants in issue one is that the chancellor erred in ignoring inconsistencies in appellees' presentation of their case, regarding the interpretation of the right of way provision.

■ A chancellor's findings of fact, approved by a court en banc,[3] are controlling on appeal and will not be disturbed in the absence of manifest error and where the record supports such findings, particularly with regard to the weight and credibility of witness's testimony. *Scientific Living, Inc. v. Hohensee*, 440 Pa. 280, 270 A.2d 216 (1970), *cert. den.* 402 U.S. 1012, 91 S.Ct. 2189, 29 L.Ed.2d 435 (1971), *reh. den.* 404 U.S. 874, 92 S.Ct. 28, 30 L.Ed.2d 121 (1971). Our review of the record reveals no error in the chancellor's findings of facts.

We therefore find no merit in appellants' first issue.

## II.

Appellants' second issue is whether the action should have been barred by the doctrine of unclean hands. The thrust of their argument is that time was of the essence in this agreement and that appellees intentionally delayed the consummation of the sale.

■ The bar of unclean hands is applicable only where the wrongdoing of the plaintiff directly affects the equita-

**3.** The denial of appellants' exceptions was approved by the court en banc below.

ble relationship subsisting between the parties and is directly connected with the matter in controversy. *Hartman v. Cohn,* 350 Pa. 41, 38 A.2d 22 (1944). Appellants' argument is specious, however, because (1) the chancellor was clearly correct that the evidence failed to support the allegations of wrongdoing and (2) the chancellor was correct in holding that time had *not* been made of the essence in the instant sales agreement. The agreement in paragraph 18 sets forth the procedure for making time of the essence, namely by written notice. No such notice was given by appellants and therefore, time cannot be considered to have been of the essence. Also, it is clear that time is not generally regarded as of the essence in a contract for the sale of real property. *Shumaker v. Lear,* 235 Pa.Super. 509, 345 A.2d 249 (1975).

### III.

Appellants' final argument is whether it was error to grant specific performance and to grant a reduction in sales price, based on the fluctuation in mortgage rates.

Specific performance should be granted only where the facts clearly establish plaintiff's right thereto, where no adequate remedy at law exists and where justice requires it. *Clark v. Pa. State Police,* 496 Pa. 310, 436 A.2d 1383 (1981). As a remedy for a breach of contract, specific performance will not be granted unless the agreement to be enforced is complete and certain. *Field v. Golden Triangle Broadcasting, Inc.,* 451 Pa. 410, 305 A.2d 689 (1973), *cert. den.* 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974). Such relief may be granted if the terms of an agreement for the sale of realty are violated by the vendor. *Payne v. Clark,* 409 Pa. 557, 187 A.2d 769 (1963). Based on our review of the entire record, we find no abuse, due to the unique nature of improved real property and appellants' conduct in improperly refusing to perform.

The chancellor ordered the sale of the property be made at a purchase price of $46,758.36 with credit given to appellees for the $1,500.00 in hand money plus interest and

credit given to appellants for improvements in the amount of $14,300.00. The $46,758.36 figure was calculated by adding the value of improvements ($14,300.00) to the original purchase price ($63,900.00) and then subtracting $31,-441.64, the present value of the increased cost to appellees of securing a mortgage at 15.25% at the date of the decree nisi, versus the mortgage rate of 10.25% on the loan of $57,500.00,[4] which appellees had secured at the time of the two closings.

Appellant argues that this reduction in purchase price is shocking, unforeseeable and likely to cause a windfall to appellees.

We note that consequential damages, to be recoverable, must have been reasonably foreseeable at the time the contract was made. *Frank B. Bozzo, Inc. v. Electric Weld Division of Fort Pitt Bridge Division of Spang Industries, Inc.*, 283 Pa.Super. 35, 423 A.2d 702 (1980), *aff'd* 495 Pa. 617, 435 A.2d 176 (1981). However, such relief in addition to the actual specific performance is not truly categorized as damages, but as an accounting by which the chancellor fairly apportions the costs between the parties. *See Easton Theatres v. Wells Fargo Land & Mortgage Co., Inc.*, 265 Pa.Super. 334, 401 A.2d 1333 (1979), *app. dism'd*, 498 Pa. 557, 449 A.2d 1372 (1982); 71 Am.Jur.2d, Specific Performance § 216 (1973).

We disagree that these "damages" were unforeseeable, in any event. The sales agreement contained a rider making the sale contingent on appellees obtaining a mortgage commitment at a *specified interest rate*. This clearly gave appellants notice that the mortgage interest rate was material to appellees' performance of the contract.

**4.** Specifically, the trial court determined that the difference in *monthly* payments on the amount originally borrowed by appellees ($57,-500.00), with an interest rate of 15.25% versus 10.25%, amounted to $203.55. Over the life of the mortgage, (20 years) the total was calculated at $48,852.00. This sum was then reduced to a present value with a present worth factor of 6%, to arrive at the $31,441.64 figure.

Although no Pennsylvania appellate court precedent exists for the reduction of sales price of realty by the difference in mortgage interest rates in a specific performance action, other jurisdictions have approved an identical method of calculation: *Reis v. Sparks,* 547 F.2d 236 (4th Cir. 1976) (applying Maryland law); *Hutton v. Gliksberg,* 128 Cal.App.3d 240, 180 Cal.Rptr. 141 (1982); *Walker v. Benton,* 407 So.2d 305 (Fla.Dist.Ct.App.1981); *Goodwin v. Lindbert,* 101 Mich.App. 754, 300 N.W.2d 514 (1980); *Regan v. Lanze,* 47 A.D.2d 378, 366 N.Y.S.2d 512 (N.Y.App. Div.1975) *rev'd on other gds.,* 40 N.Y.2d 475, 354 N.E.2d 818, 387 N.Y.S.2d 79 (1976). We find no error in the reduction of the original purchase price by the chancellor's method of calculating the mortgage interest rate differential.

Order affirmed.