## Schetrompf v. Utermoehlen

*Jan G. Sulcove,* for plaintiff.
*James M. Schall,* for defendant.

EPPINGER, *P.J.*, December 2, 1985—Gerald R. Schetrompf (buyer) filed this equity action to compel Frank L. Utermoehlen, Jr. and Janet D. Utermoehlen (owners) to compel specific performance of a contract under which the owners are required to convey a parcel of land in Union Township, Fulton County, to him.

Before the owners bought the tract out of which this parcel is to be divided, the buyer rented it from Isabel Lashley. During this tenancy, the buyer tried to buy the parcel upon which his mobile home is located from Mrs. Lashley. Then when the property was sold by Lashley to the present owner, the buyer started negotiations with the owners to buy it.

The negotiations reached a serious stage and the buyer had a tract of 3.27 acres surveyed at a cost of $200 and the subdivision was approved by the Fulton County Planning Commission. After that the parties met in a lawyer's office and the owners gave the buyer a receipt in the following form:

July 26, 1980

Received of Gerald Schetrompf the sum of $10. down payment on 3.27 acres in Union Township Fulton Co. Pa., as approved July 16, 1980 by Fulton Co. Planning Commission. Balance $2990. Settlement August 9, 1980.

Franklin Utermoehlen, Jr.
Janet D. Utermoehlen

The owners agree that at the time the receipt was given they intended to convey the 3.27 acres of real estate to the buyer. The date passed without a settlement.

The owners had mortgaged the entire tract to secure a loan from Mrs. Lashley. When settlement

time came, they had not been able to make arrangements with Mrs. Lashley to release the lien of the mortgage so they could convey the property free and clear to the buyers. After that the buyer frequently contacted the owners or the attorney to obtain a settlement without avail. The time was extended because of the mortgage situation.

In the meantime, with the consent of the owners, the buyer made substantial improvements to the lot, the husband having said that the buyer should use the lot as he saw fit as he would soon be the owner.

On October 12, 1981, the buyer signed a paper reading as follows:

### RENT AGREEMENT

This rent agreement covers a Lot at the end of my property consisting of a trailer site and existing yard, also a garden plot already agreed on by Landlord.
Tenant is aware of problems with well.
Tenant agrees to keep said property clean and free of debris.
Tenant agrees to obtain insurance on said property.
This agreement is renewable monthly upon receipt of $40.00.
This agreement may be broken by either party upon thirty days notice.

s/ Gerald Schetrompf

_____
(Tenant)
Date: Oct. 12, 1981

s/ Franklin L. Utermoehlen, Jr.

_____

(Landlord)
Date: Oct. 12, 1981

The owners contend that this is a new agreement which supersedes their agreement to sell the real estate to the buyer and claim that no rent was charged for the premises from July 26, 1980 until the date of this agreement because the buyer had expended money on the property. They also contend that at some point the $10 down payment was refunded to the buyer. The husband says he gave the buyer a check for $10 which did not clear the bank and that later he paid the buyer cash. The buyer denies the transaction occurred at all.

Sometime in the late summer of 1983, the owners put the land on the market and a "For Sale" sign was put up. The husband gave the buyer notice to vacate by October 1, 1983. The notice was received by the buyer on August 23, 1983. The owners did not cash a check from the buyer dated August 23, 1983, marked: "Rent for October." The buyer did not vacate and on October 3, 1983, the husband owner filed an action with a district justice of the peace for possession of the real estate but that case never went forward. After that the buyer filed a complaint with a district justice of the peace against the owners asking for damages for unjust enrichment of the owners by the buyer's expenditure of $372.23 on improvements to the property and $200 for the survey. That case was never pursued either.

A second landlord and tenant complaint was filed by the husband owner against the buyer before a district justice of the peace for possession of the real estate on December 14, 1983, but that action was never prosecuted to conclusion.

After the "For Sale" sign appeared, the buyer realized the owners were not going to convey the tract

to him. He made several other efforts to obtain a settlement but did not succeed and on March 28, 1984, he filed this suit.

The owners have filed a counterclaim for rent due in the amount of $40 per month from September 12, 1983.

The owners' legal theory is that regardless of their agreement to sell the land to the buyer, the document dated October 12, 1981 (Rent Agreement) terminated the sales agreement and restored the parties to landlord and tenant. They further argue that the buyer in effect surrendered his right to purchase the real estate when he filed an action before a district justice of the peace for unjust enrichment against the owners. We find no authority for either argument.

One of the contentions made by the owners is that it was the buyer's responsibility to obtain a release of the real estate from the mortgage lien. It is not mentioned in the agreement which party was to obtain a release of the property from the mortgage but the buyer testified that after the agreement was signed the owner promised several times to take care of the mortgage. We find this testimony credible and the owners' actions support this conclusion.

It is always proper for the parties to an agreement to show by parol evidence a subsequent modification or addition to the agreement. Sipowicz v. Olivieri, 174 Pa. Super. 549, 552, 102 A.2d 175, 177 (1954). The buyer has met his burden of proof to establish the modification and it is convincing to us as the fact finder. Id. at 552, 177.

The buyer had a right to rely on the owners' promise to convey title free of the mortgage and this is so even if the buyer knew of the mortgage at the time he signed the agreement. Ziskind v. Bruce Lee

Corp., 224 Pa. Super. 518, 523, 307 A.2d 377, 378 (1973). The buyer is entitled to delivery of title as promised.

The document the parties signed on July 26, 1980 was a valid, binding contract to sell the real estate in question to the buyers. The owners admit this in paragraph 4 of their answer. As such, the agreement is enforceable. Patrick & Wilkins Co. v. Adams, 471 Pa. 63, 70, 369 A.2d 1195, 1199 (1977).

The agreement specified that settlement should take place on August 9, 1980, but did not specify that time was of the essence. In this case, equity will regard it as sufficient if the contract is performed within a reasonable time after that date. Tanenbaum v. Sears, Roebuck & Co., 265 Pa. Super. 78, 86, 401 A.2d 809, 813 (1979). The failure to perform on the specified date was not per se, a breach of the contract by either party. Id. at 86, 813.

What was a reasonable time for the settlement to take place is a question for the fact finder and is to be determined by considering all the circumstances. Reagan v. D.&D. Builders, Inc., 277 Pa. Super. 140, 143, 419 A.2d 700, 702 (1980). Two years and five months has been held to be a reasonable time, Glover v. Grubbs, 367 Pa. 257, 259, 80 A.2d 75, 76 (1951); as has seven years, Allardice v. McCain, 375 Pa. 528, 101 A.2d 385 (1954).

Here, as in Allardice, the buyer was at all times ready, willing and able to perform and made repeated requests for a deed in conformity with the original agreement of sale. He testified that he repeatedly contacted the owners and the attorney in order to obtain settlement. The owners were never ready, continually delayed settlement, and with the placing of a "For Sale" sign on the buyer's land,

made clear that they had no intention of honoring the agreement thus breaching the same. A tender of the balance of the purchase price by the buyer while the owners continued to delay settlement and eventually repudiated the contract would have been a useless and futile act and was not necessary. Sunseri v. Mancuso, 362 Pa. 161, 163, 66 A.2d 830, 831 (1949); Suchan v. Swope, 357 Pa. 16, 23, 53 A.2d 116, 119 (1947).*

The owners claim that on December 24, 1980, they refunded to the buyer his $10 downpayment which the buyer disputes. We accept the buyer's testimony that this never occurred as credible and supported by the evidence. Beato v. DiPilato, 175 Pa. Super. 602, 607, 106 A.2d 641, 644 (1954). Even if we believed the owners' testimony on this point, refunding the downpayment does not constitute rescission of the contract. Allardice v. McCain, supra at 533, 387. The buyer could have retained the $10 payment from the owners and still demanded a tender of the deed standing on the rights conferred on him by the agreement of sale. A "vendor cannot force rescission on a vendee who does not assent thereto and the mere failure to object to repudiation is not a manifestation of assent." Id. at 533, 388.

When the agreement was made to sell the land, equity considered the buyer as the purchaser of the estate sold and as a trustee for the owners for the purchase money. See Allardice v. McCain, supra at 536, 389. The buyer was in possession not only un-

---

* It is defendants' argument that settlement did not occur soon enough. But it is defendants who had delayed the settlement by being unable or unwilling to clear the title; plaintiff has been ready and willing to close.

der the rent agreement signed October 12, 1981, but also under the agreement of sale which is not an inconsistent conclusion. Id. at 537, 389. The rent agreement merely protected the owners in case settlement was delayed and the buyer remained in possession. We have found no case where it was held that a rent agreement prevented equitable title from vesting in the buyer. There had to be a "meeting of the minds" by the parties in order for the rent agreement to terminate the sales agreement. Rusiski v. Pribonic, 326 Pa. Super. 545, 551, 474 A.2d 624, 627 (1984). It is clear from the evidence that the buyer had no intention for the rent agreement to terminate the sales agreement.

The owners' argument that the buyer surrendered his right to purchase the real estate when he filed an action before a district justice for unjust enrichment is really a claim that the buyer's action justifies the inference that he assented to a rescission of the sales agreement. However, the acts accompanying a rescission must be such as leave no doubt of the intent of the parties. Allardice v. McCain, supra at 534, 388. Again, no evidence was presented that the buyer intended to rescind the sales agreement by instituting an action for unjust enrichment.

The buyers ask for specific performance and we find that this is an appropriate case for it. The essential basis of a decree for specific performance of a contract to convey real property is a definite agreement regarding a specific piece of land. Schmidt v. Steinacker, 165 Pa. Super. 69, 72, 67 A.2d 664, 666 (1949). Justice must require such a decree, there must be no adequate remedy at law, and it can be granted only if the terms of the agreement are vio-

lated by the vendor. Rusiski v. Pribonic, supra at 554, 629.

As previously mentioned, the owners do not dispute the existence or validity of the agreement. Improved real property is unique. Rusiski v. Pribonic, supra at 554, 629. The buyer testified to the many improvements he made to the property and this fact, along with the owners' conduct in improperly refusing to perform, prove that the buyer has no adequate remedy at law thus justifying specific performance. Id. at 554, 629.

The owners are to convey the property to the buyer at the agreed upon price of $2,990. The owners have 90 days to clear the title to the property. The rent agreement was also valid and we grant the owners' counterclaim for rent due in the amount of $40 per month from September 12, 1983.

## DECREE NISI

November 27, 1985, the court finds for plaintiff, Gerald R. Schetrompf, against the defendants, Franklin L. Utermoehlen, Jr. and Janet D. Utermoehlen, his wife, and orders defendants to convey to plaintiff the real property specified in their July 26, 1980 agreement at a price of $2,990. Defendants shall clear the title to said property within ninety (90) days and make the conveyance to plaintiff. In default of such action, the court by subsequent order shall direct other relief as may be necessary.

Defendants' counterclaim is granted and plaintiff shall pay defendants' rent of $40 per month from September 12, 1983.

This decree shall become final unless exceptions are filed within 10 days.