In the Matter of Joseph P. PETROF and Emery M. Petrof, t/d/b/a Petrof Contracting Company, Debtors.

James R. WALSH, Esquire Trustee of the Bankruptcy Estate of Joseph P. Petrof and Emery M. Petrof, t/d/b/a Petrof Contracting Company, Plaintiff,

v.

UNITED STATES NATIONAL BANK IN JOHNSTOWN, a corporation, Defendant.

Bankruptcy No. 84–946.
Adv. No. 86–00081.

United States Bankruptcy Court,
W.D. Pennsylvania.

July 29, 1986.

James R. Walsh, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, Pa., for plaintiff/trustee.

Gilbert E. Caroff, Johnstown, Pa., for defendant.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is the Trustee's Motion for Summary Judgment on his Complaint to Require Turnover of Estate Property. The issue has been briefed and a hearing held thereon. Based upon our analysis of these issues, the Trustee's Motion is denied.

## FACTS

The Debtors in this case, operators of a coal-stripping business, executed a Demand Note to the United States National Bank in Johnstown (hereinafter "Bank"), in the amount of $210,360.54. The Note was to be paid in monthly installments, with an interest rate of one percent (1%) above the Bank's prime rate. Said Note also included a Confession of Judgment clause; however, no such judgment was ever filed. An additional provision concerning default on the repayment included the following pertinent language:

> ... [I]nterest at the rate provided in the Note will continue to accrue on all sums due until we receive payment in full, even if we have obtained a judgment against you.

This Note was secured by a perfected security interest in mining equipment and off-the-road vehicles. A guaranty obligation was executed by Raymond and Mary Westrick, owners of the land to be mined by the Debtors.

Debtors defaulted on the repayment due under the security agreement and Note.

On January 9, 1984, the Bank gave the Debtors two (2) written notices of default:

1) A notice of default on the promissory Note with demand for payments in full; and,

2) A notice of default under the security agreement, with demand for the surrender of the collateral.

Thereafter, on January 26, 1984, the Bank instituted a Replevin action in the Court of Common Pleas for Cambria County. The Debtors filed their Chapter 11 bankruptcy petition on May 14, 1984. The Court appointed the Trustee in this case on July 31, 1984, and scheduled a sale of the collateral for August 15, 1984.

The sale was confirmed with a high bid of $290,000.00, offered by Raymond Westrick, the guarantor of the Note. The Court's Order confirming the sale states that the Bank agreed to stop the running of any further interest as of the sale date. Thereafter, on October 9, 1984, the Bank notified the Trustee that the outstanding balance due on the Note was $213,010.04. The Trustee forwarded this amount to the Bank that day.

The Trustee brought this action for turnover on January 14, 1986, alleging that the $213,010.04 payment included interest at the contract rate of 12.25%, but that the Bank was only entitled to legal interest at six percent (6%) from the time of the default notice on January 9, 1984. The Trustee asserts, therefore, that a refund of $8,171.73, plus interest, is now required.

## ANALYSIS

The Trustee argues that there are three situations wherein the contract rate of interest converts to the legal rate of six percent (6%): 1) default; 2) maturity; and 3) entry of a judgment. *Daset Mining Corp. v. Industrial Fuels Corp.*, 326 Pa. Super. 1, 473 A.2d 584 (1984); *Long v. Long*, 34 D & C3d 135 (1983); *Dunbar v. Dunbar*, 9 D & C3d 214 (1977); *Parkhurst v. Baumgarten*, 81 D & C 312 (1952). The parties can by mutual consent agree to other terms, such as the contract rate of

interest. However, the language must be clear and all inclusive.

In the case at bar, the Trustee contends that the contract spoke to the contract rate of interest "even if we have obtained a judgment against you." As such, the Trustee claims that the conract rate would continue only in the event that a judgment was entered. As no judgment has been entered, the Trustee asserts that the legal rate should be imposed by operation of law.

The Trustee further argues that the term "judgment" is capable of more than one interpretation in this case. In pointing to the Confession of Judgment clause, he contends that while no such judgment was filed, such action could have occurred immediately upon execution of the Note. As such a judgment would precede either default or maturity, the Trustee argues that "judgment" cannot be read as an all-inclusive final act.

When a contractual provision is clear and unequivocal, it cannot be given a meaning other than that expressed. *Village Beer and Beverage, Inc. v. Vernon D. Cox and Co., Inc.,* 327 Pa.Super. 99, 475 A.2d 117 (1984); *Rusiski v. Pribonic,* 326 Pa.Super. 545, 474 A.2d 624 (1984).

By the same token, language which is ambiguous and lends itself to more than one interpretation, must be read against the drafter. *Central Transportation, Inc. v. Board of Assessment Appeals,* 490 Pa. 486, 417, A.2d 144 (1980); *Village Beer and Beverage, Inc., supra; Rusiski, supra; In re Dublin Properties,* 27 B.R. 506 (Bktcy.E.D.Pa.1983).

In order to determine the clarity of the language, we must examine the entire provision. It appears in the contract as follows:

**Default:** Even if you are required to make Principal or Interest payments from time to time, this Note is payable UPON DEMAND. We may demand payment at any time. If you fail to make any payment when due, or to pay us in full upon demand, you will be in default of this Note. If you default on this Note you will be in default of every other obligation with us. We may exercise our rights to set-off in any of your property then in our possession, as well as all of the rights of a secured party under the Pennsylvania Uniform Commercial Code, and all of the rights granted to us in any other security agreement or mortgage. The proceeds of any property securing this Note will be applied first to our costs of collection and selling the property, including our court costs and reasonable attorney's fees of 20% of the amount due, and will then be applied to reduce the amounts you owe us on this Note. Interest at the rate provided in the Note will continue to accrue on all sums due until we receive payment in full, even if we have obtained a judgment against you.

All of the language contained in this provision deals with various aspects of default. Initially this section explains what actions or lack thereof will cause the debtor to be in default. The section then explains what actions the Bank may rightfully pursue, if the debtor is in default.

The final sentence of this provision must be read as explaining the debtor's continuing responsibilities in the event of a default. Any other reading of this provision would require the Court to give the language a meaning other than that expressed. *Village Beer and Beverage, Inc., supra.*

If the last sentence of the provision appeared under the section entitled 'Miscellaneous', or was listed as a separate section, unto itself, we might agree that the "judgment" referred to would be capable of more than one interpretation. However, phrased as it is, in the concluding sentence of the provision which specifically speaks to default, the word "judgment" cannot be read to include the possibility of the confession of judgment.

Had the Bank submitted a cross-motion for Summary Judgment, the Court would have granted it and an Order would have been so entered. As no such request has been made, the Court will only enter an

Order denying the Trustee's Motion for Summary Judgment.

An appropriate Order will be issued.